40  135
s46  773

LEROY MARTIN, APPELLEE, v. WILLIAM P. MILES, APPELLANT.

FILED APRIL 17, 1894.   No. 6592.

1. **Elections:** CONTESTS: BALLOTS: EVIDENCE. In a contest of election the ballots cast at the election constitute the primary evidence on which to determine the rights of the respective parties. It must appear, however, that these ballots have been preserved substantially in the manner and by the officers prescribed by the statute. If they have been placed in a position to be tampered with by interested parties, the burden of proof is on the party offering them in evidence to show that they are in the same condition as when sealed up by the several election boards. Following *Albert v. Twohig*, 35 Neb., 563.

2. ———: ———: PRESERVATION OF BALLOTS: EVIDENCE. Where the testimony in a contested case showed that the ballots offered in evidence had been by the county clerk sent to the secretary

of state, by whom, about a month afterwards, they had been
returned to such county clerk in a grain sack tied with a string
and not sealed or in any other way fastened so as to afford evi-
dence that the same had not been tampered with, and there was
no evidence negativing the possibility that the string fastening
said grain sack might have been untied and its contents altered,
*held,* that such ballots should not have been considered.

APPEAL from the district court of Cheyenne county.
Heard below before NEVILLE, J.

*William P. Miles, George W. Heist,* and *Henry St. Ray-
ner,* for appellant:

The burden of proof is on the contestant, when he seeks
to introduce the ballots to overturn the official count, to
establish by affirmative evidence that they have been pre-
served substantially in the manner and by the officers pre-
scribed by the statute; that they are the genuine ballots cast
by the voters, and that they have not been tampered with.
(*Albert v. Twohig,* 35 Neb., 563; *Spurgin v. Thompson,* 37
Neb., 39; *People v. Livingston,* 79 N. Y., 279; *Hudson v.
Solomon,* 19 Kan., 186; *People v. Sackett,* 14 Mich., 325;
*People v. Robertson,* 27 Mich., 129; *People v. Holden,* 28
Cal., 123; *People v. Burden,* 45 Cal., 241; *Coglan v. Beard,*
65 Cal., 58; *Fenton v. Scott,* 17 Ore., 189; *Newton v. New-
ell,* 26 Minn., 259; *Kingery v. Berry,* 94 Ill., 521; *Dorey
v. Lynn,* 31 Kan., 758; *Powell v. Holman,* 6 S. W. Rep.
[Ark.], 509; *State v. Randall,* 35 O. St., 64; *Spidle v. Mc-
Cracken,* 25 Pac. Rep. [Kan.], 897; *State v. Bate,* 70 Wis.,
413; *Andrews v. Judge of Probate,* 74 Mich., 278; *State v.
Donnewirth,* 21 O. St., 220; Cooley, Const. Lim. [5th ed.],
625; 6 Am. & Eng. Ency. Law, 341, 342, 424, 425.)

*H. D. Rhea, contra:*

The preservation of the ballots being the ultimate pur-
pose of the statute, the omission to follow all the require-
ments and formalities of the statute to secure that object is

not fatal. (*People v. Higgins*, 3 Mich., 233; *People v. Cicott*, 16 Mich., 283–306; *People v. Sackett*, 14 Mich., 320; *Hudson v. Solomon*, 19 Kan., 180; *Russell v. State*, 11 Kan., 308.)

Returns sent out after a statutory time are good if not defective in form. (*Hulseman v. Rems*, 41 Pa. St., 396.)

The rights of one properly elected cannot be impaired by an omission of the officers to properly preserve the ballots. The statute prescribing how they shall be preserved is directory merely. (*State v. Judge of Ninth Judicial Circuit*, 13 Ala., 806; *People v. Livingston*, 79 N. Y., 290; *Fenton v. Scott*, 17 Ore., 189; *Coglan v. Beard*, 65 Cal., 62; *People v. Holden*, 28 Cal., 124.)

RYAN, C.

At the general election held in Cheyenne county, Nebraska, on November 8, 1892, the parties to this case were candidates for the office of county attorney of said county. The canvassers of the votes cast at said election declared that the incumbent had received 463 votes and that the contestant had received 462 votes for the aforesaid office of county attorney. Upon a trial in the county court it was found and adjudged that there had been cast for the incumbent 471 votes and for the contestant 454 votes,—a majority of seventeen for the incumbent. On appeal in the district court of said county it was adjudged that contestant had received 503 votes, while the incumbent had received but 474,—a majority of twenty-nine in favor of the contestant. The incumbent appeals to this court. It is deemed necessary to consider but one question, for reasons which will hereafter require no explanation. On the trial in the district court Daniel McAleese, county clerk of Cheyenne county, testified as follows:

Q. You may state to the court if you have the ballots that were used and voted at the last general election held November 8, 1892, in your possession.

A. I could not say whether they were the same or not. They were sent to Lincoln to be examined in a case. I don't know what it was—an amendment, I think, to the constitution,—and they were returned again. I can't say. I don't know whether they were the same or not.

Q. Are they the same ballots that were returned to you by the judges of election?

A. I cannot tell. They were the same that were returned from Lincoln.

Q. And the ones returned from the judges and clerks of election?

A. They may be. I would not swear to it.

*          *          *          *          *          *          *

Q. How many packages did you send to Lincoln?

A. I don't know how many. I think about fifteen.

Q. Fifteen districts?

A. Districts or precincts.

Q. Were the same number sent back to you?

A. I did not count them. It was my deputy.

On cross-examination this witness testified as follows:

Q. How long were they [the ballots] away from your office?

A. I am not sure about that—the exact time.

Q. About how long?

A. I think about a month.

Q. And you do not know whether these ballots you say you have in the county clerk's office now are the same ballots that were sent to Lincoln by you?

A. I would not swear positively that they were, but I think they are.

Q. Can you swear positively that they are all or the same ballots that were sent to Lincoln by you?

A. I can't swear, because I did not count them.

*          *          *          *          *          *

On re-examination this witness testified as follows:

Q. By what authority did you send the ballots to Lincoln?

Martin v. Miles.

A. By authority of the auditor of public accounts.

By the Court: Do you mean the state auditor?

A. Yes, sir; the secretary of state.

Q. In what manner did you send them?

A. My deputy sent them.

\*      \*      \*      \*      \*      \*      \*

Q. Were they sent as directed by the auditor of public accounts?

A. Yes, I presume they were.

Q. In what manner were they returned, and by whom?

A. My deputy can tell you that. I don't know. We have no instructions for their return whatever.

By the Court: Do you know who they were received from?

A. I do not.

Q. Does your deputy know?

A. He may know.

James McMullen, the deputy clerk of said county, was then called, and testified that the ballots in question were sent to Lincoln by authority of an act passed by the state legislature and certified to the county clerk of Cheyenne county by the secretary of state. This order was in the following language:

"STATE OF NEBRASKA,
"OFFICE OF THE SECRETARY OF STATE,
"LINCOLN, NEB., February 10, 1893.

"*Dan'l McAleese, Esq., County Clerk, Cheyenne County, Sidney, Nebraska*—DEAR SIR: Your attention is respectfully called to House Roll No. 112:

"'An act to recount the ballots cast for and against an amendment to the constitution relating to executive officers, and an amendment to the constitution relating to permanent school funds, on the 8th of November, 1892, and to declare the result.

"'*Be it enacted by the Legislature of Nebraska:*

"'Section 1. County clerks of each county of this state

are hereby required to forward, on or before the 15th day of February, 1893, all ballots and poll-books returned to said clerks by the judges and clerks of election held on the 8th day of November, 1892.

"'Sec. 5. Any county clerk failing to transmit the ballots and poll-books as required by this act shall be deemed guilty of a misdemeanor and shall be fined not less than $100 or not more than $500.'

"The act referred to in this letter originated in the house of representatives and passed the legislature February 9, 1893. You will please forward to secretary of state the ballots and poll-books as mentioned in this letter.

"Yours respectfully,

"[SEAL.]                  JOHN C. ALLEN,
*"Secretary of State.*
"By C. C. CALDWELL,

*"Deputy."*
."By express, February 13, 1893.
"D. MCALEESE,
*"County Clerk.*
"JAMES MCMULLEN, *Deputy."*

After identifying the above notice, Mr. McMullen's evidence was as follows:

Q. Upon receiving that order what did you do in reference to the ballots of this county?

A. I immediately tied up all the ballots that I received from the judges and clerks of election, and also all poll-books, and put them in a grain sack and secured a string around the neck of the grain sack and sealed it thoroughly with sealing wax and sent it by express to the secretary of state to Lincoln, Nebraska.

Q. When were they returned, if at all?

A. A similar package was returned. I did not note the date, but I presume they were gone about a month. I believe I noted the date when I sent them away, but when I received them back again I did not note the date. They

came back in the same grain sack, I believe, unsealed, simply tied with a string.

Q. How was it sent?

A. By express.

Q. And you have these ballots in your possession at this time as a public officer?

A. I never opened the sack. I don't know what was in it.

Q. I say, you have that sack in your possession and its contents?

A. Yes, sir.

On his cross-examination this witness said:

A. I received no note of any kind from the secretary of state whatever. I got notice from the express agent at Sidney that a package was in the office for the county clerk. I sent to the express office for it and left it in the office of the county clerk. Have no communication from the secretary of state.

Q. Didn't the secretary of state ever notify you that the ballots sent by you had been returned?

A. He did not.

Q. Did he ever notify you that the same identical ballots sent by you had been returned?

A. He did not.

There was other evidence from these witnesses who were recalled, but in substance it was the same as that which has been just set out.

House roll No. 112, referred to in the circular letter of the secretary of state, is found under the head of "Special Laws and Resolutions," as chapter 68 of the Laws of 1893. This act makes no provision for the return of the ballots and poll-books to the respective counties from which they were required to be forwarded to the secretary of state. In the matter under consideration the ballots and poll-books were absent from the office of the county clerk of Cheyenne county for the space of about a month. It is shown by the

above testimony that when they were forwarded by the said county clerk they were sealed in a securely tied grain sack, and this fact of sealing would afford some guaranty against the contents of the sack being tampered with in transit. While the special act referred to was silent as to the duty of the secretary of state in respect to the manner of his returning the poll-books and ballots to the clerks of the counties from which they had been forwarded to him, it would be but a reasonable requirement that if such return was made in a grain sack the sack should be securely tied, and precaution should be taken against the sack being opened without leaving evidence of that fact. Under analogous circumstances this sealing is required by sections 77 and 78, chapter 26, Compiled Statutes. So far as the testimony shows, we are left entirely in the dark as to the receipt and disposition of this sack in the office of the secretary of state, as well as of the manner in which it was preserved while in that office, as also while it was under the consideration of the legislature; and finally the sack with its contents was returned to the county clerk in such condition that to have tampered with its contents would have been the easiest matter in the world, and one as to which no trace or evidence would have remained. We are not required to determine whether or not, in addition to this carelessness, there should be shown an actual tampering with the ballots and poll-books; neither are we required to infer that through this carelessness such tampering did actually take place. It is sufficient that ample opportunities were afforded for falsifying the choice of the people as shown by the ballots and poll-books, in the course of their transportation from Lincoln to Sidney, and afterwards from the office of the express company to the office of the county clerk.

In *Albert v. Twohig*, 35 Neb., 563, it was held in a contest of election that the ballots cast at such election constituted the primary evidence to determine the rights of the respective parties, and that to their consideration in evidence

it must appear that they had been preserved substantially in the manner and by the officer prescribed by the statute. To our purpose the following language of the syllabus is specially applicable: "If they [the ballots] have been placed in a position to be tampered with by interested parties, the burden of proof is on the party offering them in evidence to show that they are in the same condition as when sealed up by the several election boards." It requires no amplification to extend the operation of this rule to the facts of the case at bar. The court erred in overruling the objection of the incumbent to the ballots offered as original evidence for the reasons above fully indicated. The judgment of the district court is

REVERSED.