HOSMER H. HENDEE v. NAPOLEON B. HAYDEN.

FILED NOVEMBER 20, 1894.    No. 6998.

**Elections:** CONTESTS: BALLOTS: EVIDENCE. The ballots cast
at an election are the primary or controlling evidence of the
result of the election, but the returns made by the canvassing
board of any voting precinct or district to the county clerk are
*prima facie* evidence of such result; and where in the trial of a
contest the votes cast in a voting precinct were brought into
the trial court, and there the package in which they were in-
closed and sealed was opened and the ballots recounted, and
during such recount a number of "spoiled" ballots, which had
been irregularly, and contrary to the law governing elections and
in reference to the disposition to be made of such ballots, but
without any fraudulent intent, strung upon the same string as
the cast ballots, but at an end thereof and in a separate bundle,
with the string looped and tied around it, making a knot which
divided the spoiled from the other ballots, were counted with
the ones cast at the election and so mixed with them as to be
indistinguishable, *held*, that such recount did not establish the
result of the election as between the contestant and contestee,
and that by the intermingling of the "spoiled" and other bal-
lots they were rendered incompetent as evidence of the result
of the election, but that as the will and choice of the voters ex-
pressed at such election, in the absence of fraud or illegality,
should be ascertained if any authentic or satisfactory testimony
existed by which the result might be proved, and the returns
made to the county clerk, being *prima facie* evidence of such
facts, were competent and should have been considered by the
court; *and held further*, that it was not competent, under the
circumstances above detailed, to apportion the "spoiled" ballots
between the contestant and contestee and deduct from the vote
of each one a share of such ballots, proportioned according to
the whole number of votes cast for him.

ERROR from the district court of Saline county.   Tried
below before BUSH, J.

*Abbott & Abbott* and *J. D. Pope*, for plaintiff in error,
cited: *Albert v. Twohig*, 35 Neb., 563; *Martin v. Miles*, 40

Neb., 135; *People v. Cicott*, 16 Mich., 283 ; *Powers v. Reed*, 19 O. St., 189; McCrary, Elections, sec. 463; *State v. Marston*, 6 Kan., 524 : *Russell v. State*, 11 Kan., 308; *Morris v. Valaningham*, 11 Kan., 269; *People v. Thacher*, 14 Am. Rep. [N. Y.], 312.

*Hastings & McGintie* and *A. S. Sands, contra*, cited : *Enewold v. Olsen*, 39 Neb., 59; *First Nat. Bank of Madison v. Carson*, 30 Neb., 104; *Bell v. Byerson*, 77 Am. Dec. [Ia.], 145 ; *Dunn v. State*, 35 Am. Dec. [Ark.], 61; *Convery v. Conger*, 22 Atl. Rep. [N. J.], 549.

HARRISON, J.

It appears from the record in this case that at the regular election held in this state November 7, 1893, theie were in the county of Saline four candidates for the office of county judge, of whom Napoleon B. Hayden and Hosmer H. Hendee, two of the candidates, according to the canvass and returns made by the clerks and judges of the several election districts of the county and the further canvass of such returns by the county clerk and the duly authorized board of canvassers, received each the following number of votes: N. B. Hayden, 1,331 votes, and H. H. Hendee, 1,329 votes; the other two candidates, it further appears, receiving less than 600 votes each.   In accordance with the result of the canvass, N. B. Hayden was declared duly elected to the office of county judge, and qualified and took possession of said office and assumed the performance of the duties thereof.   On November 25, 1893, Hendee commenced proceedings to contest the election by filing a complaint in the district court of Saline county, in which was pleaded why there should be a recount of the ballots in the several precincts or voting districts of the county, or a change in the returns, etc.   To this the respondent filed a motion to dismiss the petition.  This being overruled, he filed an answer, in which the allegations of the complaint

in regard to irregularities and mistakes or frauds occurring during the election, and all facts pleaded in the complaint to show the necessity for a recount, are denied and affirmative statements made in regard to illegal votes cast for contestant during the election. The contestant filed a reply, in which the affirmative allegations of the answer are denied. There was a trial of the issues to the court, and the court, at the instance of contestant, made the following special findings:

"And the court proceeded at once to a recount of the ballots of the several voting districts of said county, without the introduction of preliminary proof. Contestee excepts. And the court finds from such recount of the ballots that the ballots cast at the election held in said county on November 7, 1893, for the respective parties hereto, for the office of county judge, to be as follows:

Crete, first precinct—

For contestant, 86; for respondent, 67

Crete, second district—

For contestant, 45; for respondent, 90

Crete, third district—

For contestant, 56; for respondent, 76

Dorchester, first district—

For contestant, 44; for respondent, 42

Dorchester, second district—

For contestant, 62; for respondent, 28

Lincoln precinct—

For contestant, 63; for respondent, 13

Friend, second district—

For contestant, 138; for respondent, 28

Friend, first district—

For contestant, 131; for respondent, 25

Turkey Creek precinct—

For contestant, 44; for respondent, 32

Monroe precinct—

For contestant, 45; for respondent, 34

Pleasant Hill precinct—
　　　　　　For contestant,　48; for respondent,　71
Big Blue precinct—
　　　　　　For contestant, ˌ32; for respondent,　83

　　　　　　　　　　　　794　　　　　　　　589

Wilber, first district—
　　　　　　For contestant,　55; for respondent, 151
Wilber, second district—
　　　　　　For contestant,　37; for respondent, 138
Brush Creek precinct—
　　　　　　For contestant,　19; for respondent,　77
North Fork precinct—
　　　　　　For contestant,　27; for respondent,　54
Atlanta precinct—
　　　　　　For contestant,　65; for respondent,　32
Olive precinct—
　　　　　　For contestant,　96; for respondent,　87
South Fork precinct—
　　　　　　For contestant,　86; for respondent,　70
Swan Creek precinct—
　　　　　　For contestant,　61; for respondent,　52
De Witt, first district—
　　　　　　For contestant,　73; for respondent,　68
De Witt, second district—
　　　　　　For contestant,　45; for respondent,　27

　　　　　　　　　　　　1,358　　　　　　　1,345

"Contestee excepts.

"That being a total of all the voting districts and pre-
cincts of the county; making of the ballots so recounted:
For contestant............................................. 1,358
For the respondent ...................................... 1,345

Excess for the contestant over the respondent of....　.　13

"The court further finds that upon the recount of the
ballots of the first district of Friend precinct there were

found and recounted fourteen more ballots than there are names of voters in the poll books of that district, and that many more ballots than were canvassed by the election board of the district at that election; and the court further finds from the testimony of the election officers of said district of Friend, at that election, that there were four-teen ballots spoiled at that election, and returned to said officers as spoiled and were kept separate during the day; that none of them found their way into the ballot-box, or were canvassed by the board, but that said fourteen ballots were not put with the unused ballots and so returned to the county clerk, but were, at the close of the canvass, folded and strung on a string and the string looped around them and then the ballots that were cast and canvassed strung on the same string and were then sealed up and so returned to the county clerk. Contestee excepts. And the court further finds that upon opening and recounting said ballots all became so intermixed that it was impossible to separate the fourteen ballots from the others, and that the recount of the ballots of that district shows a gain of five votes for the contestant and one for the respondent, over the poll books and tally sheets of the district. The con-testant then put in evidence all the poll books and tally sheets of all the respective voting districts of the county and all the ballots, except the ballots of the first district of Friend. The court further finds upon the evidence of-fered to show illegal voting, under the allegations of the respondents' answer, that two illegal votes were cast and counted at said election by John Hopkins and H. D. Eldred, and that they were for the contestant. Contestee excepts. The court further finds that inasmuch as the ballots of the first district of Friend precinct are not in evidence, and are the primary evidence, the court can-not consider the poll books and tally sheets of that dis-trict as evidence, and they are therefore excluded from consideration. The court therefore finds that of all the

ballots legally cast at said election for the office of county judge of said county, and so before the court as to be considered in this case, 1,319 were cast for the respondent Napoleon B. Hayden, and 1,225 were cast for the contestant Hosmer H. Hendee, and that the said respondent was duly and lawfully elected to said office and is entitled to the same. It is therefore considered and adjudged by me that the petition of the said Hosmer H. Hendee, contestant, be and the same is hereby dismissed; and that the respondent Napoleon B. Hayden recover of and from the said contestant his costs by him herein expended, and taxed to the sum of $————. To all of which the contestant excepts."

And these further findings and judgment:

"After examining the ballots voted at the general election held in each and all of the voting precincts in Saline county, Nebraska, on the 7th day of November, 1893, which said ballots were returned to the county clerk of said county, the court finds that said ballots from each and all of the precincts, together with the poll book, were properly sealed up and returned to the county clerk of said county in compliance with the requirements of the statutes, and that said ballots had in all respects been properly preserved by the said county clerk according to the statutory requirements.

"2. After counting all of said ballots so returned to the said county clerk from each and all the voting precincts in said county, the court finds that the contestant Hosmer H. Hendee received one thousand three hundred and fifty-eight (1,358) votes for the office of county judge, and that the incumbent Napoleon B. Hayden received one thousand three hundred and forty-five (1,345) votes for the office of county judge.

"3. In the counting of said ballots there was counted from the first district of Friend precinct in said county one hundred and ninety-eight (198) ballots, of which ballots

there were cast and counted for the contestant one hundred and thirty-one (131) votes, and for the incumbent twenty-six (26) votes and forty-one (41) miscellaneous. All of the ballots so counted by the court which were cast at said general election, excepting the one hundred and ninety-eight (198) ballots returned from the said first district of Friend, were introduced in evidence by the contestant. The said one hundred and ninety-eight (198) returned from said first district of Friend precinct not being introduced in evidence by either the contestant or the incumbent, the court finds from the ballot introduced in evidence that the contestant Hosmer H. Hendee received one thousand two hundred and twenty-seven (1,227) votes for the office of county judge, and that the incumbent Napoleon B. Hayden received one thousand three hundred and nineteen (1,319) votes for the office of county judge. Contestant excepts.

"4. The court finds that two of said votes which were cast and counted for contestant were cast by non-residents and illegal voters. Contestant excepts.

"5. It is therefore considered by the court that said Napoleon B. Hayden, the incumbent, was lawfully elected to the office of county judge. It is therefore considered by the court that said election be in all things confirmed, and that the complaint be dismissed at contestant's cost. Contestant excepts."

During the progress of the case the poll books and ballots were ordered brought into court for inspection and were accordingly produced, and the envelopes or packages in which were contained the ballots opened and the votes for the contestant and contestee recounted. When the first district of Friend precinct was reached in the recount it was developed that there were some fourteen more ballots on the string (the ballots had been run upon a string before they were placed in the envelope) than, as shown by the returns, there had been votes cast in the district. The testimony of some of the judges and clerks for this district,

Hendee v. Hayden.

of this election, who were called as witnesses and testified, shows that the fourteen apparently excessive ballots were some which had been spoiled and not used by the voters, that they were kept separate from the others, and when the canvass of the votes was completed the string was drawn through them and around them and a hitch or knot made in the string to divide and keep them separated from the ballots deposited by the voters, which were then run upon the same string, and they were then all inclosed in the package in which they were taken to the county clerk with nothing to designate or call attention to the fact that some were ballots which had been used and some unused ballots, except that the few at the lower end of the string were parted from the others by having the string tied around them. The parties who made the recount not having any knowledge that the fourteen ballots had not been cast, took them from the string and counted them with the others and, as stated by the judge in his findings, " that upon opening and recounting said ballots all became so intermixed that it was impossible to separate the fourteen ballots from the others." The second assignment of error is as follows: "The court erred in excluding from his consideration (as is shown by his special findings) the poll book of the first district of Friend, whereby that district was wholly disfranchised at that election and its entire vote excluded therefrom and the result of the election of county judge thereby changed;" and the third states: " The court erred in refusing to consider the poll book of the first district of Friend as the best evidence in the case, after it became apparent to him by the testimony of witnesses and his own knowledge obtained by the recount, that the ballots of said district had become worthless as evidence in the case, by reason of the intermixture of the spoiled ballots with those voted and canvassed, whereby the voters of said district were disfranchised and the result of the election changed." These two assignments may, we think, be said to raise the

same question, viz., whether the court erred in holding that the poll books and tally sheets of the first district of Friend could not be considered as evidence, and in excluding them from consideration on the ground that the ballots were the primary evidence. The record shows that at or near the close of the taking of testimony an action was taken on behalf of contestant, with reference to offering the ballots from the first district of Friend, which we find stated as follows: "The contestant now refuses to introduce or offer in evidence any of the ballots cast in and for the first precinct and voting district of Friend, in said Saline county, and states that such refusal to offer said ballots is made by said contestant, after mature deliberation and consultation of said contestant and his attorneys, and that the said ballots of the first district of Friend are not offered in evidence, and will not be offered, by the contestant in this case." This was after all the poll books and tally sheets for all precincts and voting districts had been introduced.

The counsel for contestee contends that the ballots are primary and controlling evidence, and they being in court and within the control of the contestant for the purpose of use as testimony, if he desired so to use them, his failure or refusal to offer or use them precluded the admission or consideration of what he terms secondary evidence, the poll books and tally sheets. That the ballots are the primary and controlling evidence of the expression by the voters of their selection of candidates for the various offices to be filled at an election we think is well settled by authority. The ballot, as deposited, bears upon its face the handiwork of the voter, is a record of his choice made by himself, and when received and preserved in the manner provided by law is certainly entitled to greater weight and to be preferred as evidence of what it contains than any record made from it by others, however skillfully they may be made or accurate they may be; but with this established as the rule, does it sustain the action of the court of which

·complaint is made?   Our law provides fully for the counting of the votes by the election boards of the voting pre·cincts or districts, the making of tally lists, and the transmission to the county clerk of all ballots, poll books, and ·tally sheets after being sealed up carefully, and that such ballots as are the fourteen in this case "be made up in a sealed packet" and indorsed with the words, "unused and spoiled ballots," etc., and sent to the county clerk.   After the lists, etc., reach the county clerk, he, with two disinterested electors, open the poll books and make abstracts of the votes cast as shown by such poll books, or, in other words, canvass the votes from the returns made to the county clerk from the various election boards, and any person who is shown by these returns to have received the highest number of the votes cast for any office to be filled at such election is declared elected and receives, as the law directs, a certificate that he has been so chosen, from the ·county clerk, if it is a county office, as in the case at bar. This canvassing board, the county clerk and two electors, ·cannot go behind the returns and examine the ballots. This has frequently been decided by this court.   The ballots are to be disposed of as provided in section 47, chapter 26, page 459, Compiled Statutes, 1893: "Upon the completion of the canvass the poll books shall be again sealed up and, together with the sealed packages of ballots still unopened, securely bound in one package, shall be deposited in the office of the county clerk, where they shall be safely kept for twelve months, and the county clerk shall not allow the same to be inspected, unless in cases of contested elections, or the same become necessary to be used in evidence in the courts, and then only by the person and in the manner provided by law."

It will be gathered from the above statement in regard to the canvassing of the votes first by the election boards and their lists by the county clerk and his associates on the canvassing board that the ballots, after the election

boards have compiled the returns therefrom, are retired from the scene not to appear again unless there shall be a contest of the election instituted. The returns made to the county clerk are the evidence acted upon by the canvassing board which determines and declares who is elected, and in accordance with its conclusion the certificate of election issues. We think this constitutes the returns evidence of quite a strong character, testimony which, undoubtedly, is entitled to consideration if, for any reason, the primary evidence cannot be used. The authorities are quite uniform in holding that the returns are at least *prima facie* evidence of the results of the election. (*Albert v. Twohig*, 35 Neb., 569; *State v. Marston*, 6 Kan., 524; *Russell v. State*, 11 Kan., 308; *Hudson v. Solomon*, 19 Kan., 180; *Howard v. Shields*, 16 O. St., 184; *People v. Vail*, 20 Wend. [N. Y.], 12; *People v. Cicott*, 16 Mich., 283; *Keeler v. Robertson*, 27 Mich., 116.) The evidence in this case discloses nothing wrong with the election proceedings or canvass of the votes in the first district of Friend. The tally sheets and poll books are in no manner or degree discredited or shown to be incorrect. The voters cast their ballots as provided by law. They were duly canvassed and the result returned in proper manner and form to the officer entitled by law to receive them. That the fourteen "spoiled" ballots were strung upon the same string as the ballots cast, tied as they were, in a bundle to themselves, was at most an irregularity which could not and did not in any manner vitiate the votes cast or invalidate or in the least affect the returns, or the election in the district, but when the sealed envelopes or packages in which the ballots were contained were conveyed into court and there opened, the ballots taken therefrom and counted, and with them the fourteen ballots which had not been used, not cast by the voters, the result of such count was worthless, and of no avail, as it was in part composed of apparent votes which were never cast in the ballot-box by the voters, and there is no way by which

they can be eliminated and a true result obtained, nor can the ballots again be counted, for it is conceded that the fourteen ballots which were not voted have become so intermingled with the others that it is an impossibility to distinguish and separate them, and we do not think it is competent to count them as they now exist, nor do we think that there should be an apportionment of these votes and a deduction, applying the rule announced in *People v. Cicott,* 16 Mich., 283, cited by counsel for contestee. In that case the excessive ballots were in the box at the closing of the polls and the election officers had failed to perform their duty and draw them out as provided by law, and the court said that, so far as it could be accomplished, the provisions of the law should be fulfilled by a trial court during the trial of the case. We have not the same nor similar facts to deal with in the case at bar. Here there was no excess of ballots voted. The fourteen ballots were placed with the others after the canvass was completed and mixed with the true ballots after they were produced in court, and without the fault or wrong intent of any person, and we do not think it would be right or just to apportion them and deduct from the vote for each of these two candidates a share of them proportioned according to the whole number of votes cast in his favor. We believe it to be the rule that any person who receives the highest number of votes cast at an election for an office has a constitutional and legal right to be declared elected to and to hold such office, and if there is any satisfactory and authentic evidence from which the will and choice of the people as expressed in their ballots as deposited in the ballot-box can be shown, that it shall be ascertained and declared and not defeated, although for any reason the best evidence of the facts necessary may not be attainable. (*People v. Kilduff,* 15 Ill, 492; *Piatt v. People,* 29 Ill., 54; *Morris v. Vulaningham,* 11 Kan., 270; *Jones v. Caldwell,* 21 Kan., 186; *Powers v. Reed,* 19 O. St., 189; *People v. Cicott, supra.*) We are

satisfied that the ballots from the first district of Friend were not competent and could not be used as evidence after the fourteen "spoiled" ballots had been mixed with the others, and were no longer the controlling evidence, and that the returns as embodied in the poll books and tally sheets or lists, being *prima facie* evidence of the result of the elections in the district, should have been considered, and that the court erred in excluding them from its consideration. It follows that the judgment must be reversed and the case remanded for a new trial.

REVERSED AND REMANDED.