[No. 1460.]

## JOHN H. DENNIS, Appellant, v. W. H. CAUGHLIN, Respondent.

Elections—Canvass of Ballots—Ballots Tampered With—Conflicting Evidence.—In an election contest, the finding of the trial court that the ballots in question have been tampered with after a canvass and return by the election officers, will not be disturbed where the evidence is conflicting.

Idem—Ballots as Evidence—Exception to Rule.—The rule that, as between the ballots and a canvass of them, the ballots control, has no application where the ballots have been tampered with after they had been deposited in the box.

Appeal from the District Court of the State of Nevada, Washoe county; *George F. Talbot*, District Judge:

Action by John H. Dennis against W. H. Caughlin, to contest the latter's election to the office of Sheriff of Washoe county. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

(Second appeal. For former opinion, see 22 Nev. 447.)

The facts sufficiently appear in the opinion.

*Thos. E. Haydon*, for Appellant:

I. The well-established rule is that, where the ballots have been preserved in accordance with law, the ballots

themselves are the best evidence of the number of votes cast and for whom cast. (McCrary on Elections, sec. 439, 3d ed., secs. 443, 445; Cooley on Constitutional Limitation, 6th ed., p. 788; *Wheat* v. *Ragsdale*, 27 Ind. 191; *People* v. *Holden*, 28 Cal. 123; *Searle* v. *Clark*, 34 Kan. 49; *Ex parte Brown*, 97 Cal. 89.)

II. The object of the law in preserving the ballots is to afford the means of impeaching the returns of the election officers. (*Ex parte Brown*, 97 Cal. 89.) A ballot is to be construed as any other writing. A ballot is the only expression of a voter's will, and it must be construed according to its legal effect. (*Rutledge* v. *Crawford*, 91 Cal. 531.) In any election contest the ballots are competent and material evidence of a very high order. (*Gibson* v. *Board of Supervisors*, 80 Cal. 361.)

III. In an action to try the right to an office the list of ballots cast in any precinct, returned with the poll list and tally paper, is better evidence of the number of votes cast at the precinct and for whom cast than the tally list made from them by the officers of the election. (*People ex rel. Budd* v. *William Holden*, 28 Cal. 132.)

IV. The presumption is that the clerk kept the ballots safely without change or mutilation. If they were mutilated or changed, the burden of proof was on defendant to make proof of that fact. (*People* v. *Holden*, 28 Cal. 133; *Hartman* v. *Young*, 11 Am. St. Rep. 797–798, and notes; *Coglan* v. *Beard*, 65 Cal. 58; *Ex parte Brown*, 77 Cal. 90.)

*Torreyson & Summerfield*, for Respondent:

I. The trial court did not err in ruling and deciding, under all of the evidence, direct, circumstantial and otherwise, in the proceeding, that the ballots of Glendale precinct should be discredited and that the certificate of the election board of the precinct constituted the best and the controlling evidence of the number of votes cast for the different candidates for sheriff in that precinct.

II. It seems to be the theory of appellant that it devolves upon respondent to prove that the ballots have been tampered with in order to be permitted to rely upon the certificate of the election board as the controlling evidence to

the exclusion of the ballots. In this, the learned. counsel is mistaken. The law recognizes the fact that, in the very nature of things, it would generally be impossible to prove by direct or positive evidence that ballots have been altered. Such work is always done secretly. Therefore, the law has adopted the rule of presuming in the first instance that the election officers have honestly performed their duties in certifying to the returns and it accepts such returns *prima facie* as being correct. In order to lay the proper foundation for the admission of the ballots as evidence superior to the election returns, or certificate of the election board, the law requires that it be proved not only that the ballots have been continuously in the custody of the proper officer, but also that they have not been so exposed as to afford an opportunity for them to be tampered with by any one.

III. ·The danger that the ballots may be tampered with, after the count is made known, especially if the vote is very close, is so great that no opportunity for such tampering can be permitted. Such ballots, in order to be received in evidence, must have remained in the custody of the proper officers of the law, from the time of the original official count until they are produced before the proper court or officer, and if it appears that they have been handled by unauthorized persons, or that they have been left in an exposed and improper place, they cannot be offered to · overcome · the official count. (McCrary on Elections, 3d ed., ·436; 6 Am. and Eng. Ency. of Law, 425; *People* v. *Livingston,* 79 N. Y. 279; *People* v. *Burden,* 45 Cal. 241; *Coglan* v. *Beard,* 65 Cal. 58; Cooley's Const. Limitations, 625.) The governing rule was well stated by Justice Brewer, now of the supreme court of the United States, while he was upon the supreme bench of Kansas: (1) As to ballots cast at an election and a canvass of these ballots by the election officers, the former are the primary and controlling evidence. (2) In order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and by the officers prescribed by the statute, and that, while in such custody, they have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their

having been changed or tampered with. (*Hudson* v. *Solomon*, 19 Kan. 177; *Dorey* v. *Lynn*, 31 Kan. 758; *Kingery* v. *Berry*, 94 Ill. 515.)

IV.   Contestant's testimony certainly discloses an astounding negligence and insecurity in the custody of the ballots, and upon such testimony alone the trial court would have been amply justified in finding that abundant opportunity had been afforded for tampering with the Glendale ballots, and that for such reason the certificate of the election board, made at the time of their count, publicly, by the representatives of the various political parties, and in the presence of the partisans of the different candidates, before it was known how close the contest would be, constituted the best and the controlling evidence of the number of votes cast in that precinct for the different candidates for the office of sheriff.

V.   It is the function and province of the trial court or jury to determine, under all of the evidence, whether the ballots or the certificate of the election board should be accepted as the primary and controlling evidence, and the judgment thereof will not be disturbed by the appellate court, if there is substantial evidence to support the judgment and decision. (*Tebbe* v. *Smith*, 41 Pac. Rep. 455; McCrary on Elections, 3d ed., par. 437; *People* v. *Livingstone*, 79 N. Y. 279.)

By the Court, BELKNAP, J.:

This is the second appeal in this case (*Dennis* v. *Caughlin*, 22 Nev. 447). As stated in the former opinion, the question is whether John Hayes or William H. Caughlin was elected sheriff of Washoe county. The district court rendered judgment in favor of Caughlin. It was admitted at the trial that Hayes had received 538 votes and Caughlin 527, exclusive of the Glendale and Salt Marsh precinct returns, and 2 other ballots counted for defendant. The errors assigned consist in these returns and the 2 ballots.

In our view it will be unnecessary to consider the rulings of the district court further than the Glendale returns.

The count of the ballots of this precinct showed that Hayes received 35 votes, and Caughlin 33. If these ballots be counted irrespective of other matters in the record Hayes

would be elected by 13 votes. On the other hand, the canvass by the election precinct officers shows that Hayes received 24 votes and Caughlin 37 votes. This would elect Caughlin by 2 votes. The question then to be determined is whether the canvass by the election officers upon the night of the election or the ballots themselves should have controlled the district court in its decision.

It was shown at the trial that after the official canvass by the board of county commissioners, and until the first trial, the ballots have been kept in a cupboard in the county clerk's office. The cupboard had been selected by the clerk and his deputy as the most secluded place for their keeping. They were enclosed in the envelope or package in which they were originally received, and over this was sealed a slip or band of paper upon which the name of the clerk was written. Old books and papers were placed over them for the purpose of concealment. No one was supposed to have known where they were except the persons mentioned, and apparently the package had not been disturbed when it was introduced in evidence. The cupboard was unlocked, and persons connected with the office had keys to the office door. On the other hand, evidence was adduced tending to show that there was some feeling existing against the defendant at Glendale caused by his having been instrumental in enforcing the law against fishing in that locality and arresting offenders against it. In counting the votes by the board an unusual number of blank votes for the office of sheriff were noticed, some witnesses placing the number from 10 to 12 and others at a less figure. During the canvass, and when only a few ballots remained to be counted, a discrepancy of one vote was noticed between the clerks in tallying the vote for sheriff. Thereupon the count for sheriff was checked off from the commencement, and the mistake corrected. Upon this evidence the court decided to accept the returns to the exclusion of the ballots.

The evidence being conflicting, we cannot disturb the ruling of the district court. In support of the conclusion reached, it may be said that the checking off of the tally tended to prove the correctness of the canvass and emphasized the fact of the large number of blank votes for the office. It is sig-

nificant that the ballots show but 3 blanks instead of the 10 or 12 to which witnesses had testified. If this evidence was true, the inference is irresistible that the ballots had been tampered with. In order to further satisfy ourselves in this court, we have compared the ballots and the canvass upon nine other candidates, and our count substantially agrees with the canvass. This fact lends additional support to the ruling of the district court.

In *People* v. *Holden*, 28 Cal. 123, the court said: "Intrinsically considered, it must be conceded by all that the ballots themselves are more reliable and therefore better evidence than a mere · summary made from them. Into the latter errors may find their way, but with the former this cannot happen. The relation between the two is at least analogous to that of primary and secondary evidence."

In *Hudson* v. *Solomon*, 19 Kan.. 180, following the above case, the court said: "As between the ballots themselves, and a canvass of the ballots, the ballots are controlling. This, of course, upon the supposition that we have before us the very ballots that were cast by the voters."

Referring to this rule, Judge McCrary, in his treatise on Elections, says that it can have no application to a case where the ballots have been tampered with after they were deposited in the box. "In such a case," the learned author says, "the value of the ballots as evidence is almost totally destroyed and the returns made by the officers of election presiding at the polls may become better evidence than the ballots." (McCrary on Elections, sec. 439.)

It is unnecessary to consider the remaining errors assigned by appellant. Conceding they should be decided in his favor, the result would not be changed.

Judgment affirmed.