(60 South. 228.)

No. 19,683.

THORNHILL v. WEAR.

(Dec. 3, 1912.)

*(Syllabus by Editorial Staff.)*

1. ELECTIONS (§ 293*)—PRESERVING BALLOT BOXES—NECESSITY.

At the termination of the first trial of an election contest, the boxes containing some contested ballots were left unlocked for three weeks in the courtroom, through which persons passed in going to the office of both parties, and the fastenings on the boxes were so slight that they could be removed and replaced without attracting notice. Act No. 152 of 1898, § 21, provides that the third tally sheets, together with the ballots and poll list, shall be returned to the ballot box which shall be sealed by the commissioners, and the ballot boxes shall be delivered to the clerk to be by him safely preserved for six months, and section 23 provides substantially the same. *Held*, that it was error on the second trial to admit in evidence the ballots contained in such boxes.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 288–296; Dec. Dig. § 293.*]

2. APPEAL AND ERROR (§ 1099*)—RES ADJUDICATA—JUDGMENT ON FORMER APPEAL.

The judgment on a former appeal in an election contest is res adjudicata of the admissibility of all the evidence considered by the Supreme Court on that appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370–4379; Dec. Dig. § 1099.*]

3. APPEAL AND ERROR (§ 1099*)—PRESENTATION BELOW.

Where evidence was received without objection at trial, it could not be rejected by the Supreme Court on a second appeal, even if it should not have been admitted for reasons disclosed on the second appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370–4379; Dec. Dig. § 1099.*]

Breaux, C. J., dissenting in part.

Appeal from Thirtieth Judicial District Court, Parish of Caldwell; William M. Wallace, Special Judge.

Election contest by Commodore Perry Thornhill against George Wear. From a judgment for contestant, contestee appeals. Judgment set aside, and suit dismissed.

See, also, 59 South. 901, ante, p. 458; 59 South. 909, ante, p. 479.

Hudson, Potts & Bernstein, of Monroe, Foster, Milling, Brian & Saal, of New Orleans, George Wear, Jr., of Alexandria, and Nelson S. Woody, of New Orleans, for appellant. Hundley & Hawthorn, of Alexandria, and Grisham & Oglesby, of Winnfield, for appellee.

PROVOSTY, J. At the Democratic primary election of September 3, 1912, plaintiff and defendant were rival candidates for nomination for the office of judge of the judicial district composed of the parishes of Caldwell and La Salle. Defendant was returned as elected, and the plaintiff filed the present suit, contesting the election. The case is now before this court for the second time. The first time it was remanded in order that certain ballot boxes, which, on objection made by defendant, the trial court had refused to open, should be opened and investigated. The reason for refusing to go into these boxes had been that no irregularity had been alleged in connection with them by either of the parties. But, in view of the wide scope which the evidence had taken, this court thought that as a matter of simple, ordinary justice they should be inquired into like those which had been specially attacked in the pleadings.

It seems, however, that on the termination of the first trial the officers who should have taken charge of these unopened boxes and kept them safely did not do so but left them to take care of themselves, where they happened to be scattered about the courtroom, and that they so remained unattended to by anybody and exposed to be tampered with by whoever might choose to do so from the date of said trial, October 17, 1912, to November 8, 1912, when, by order of the judge, they were put in a safe place. The courtroom where these boxes were thus left exposed was not locked, or guarded in any way, but was accessible to any one who might wish to enter, day or night. Persons going to or returning from the offices of plaintiff and defendant passed through it. The fastenings on these boxes were so flimsy that any one might at any time remove and replace them, and no one be the wiser. So that when plaintiff asked, on the second trial, that these boxes be opened and investigated, the defendant objected, on the ground that plaintiff should first be required to show that these boxes and their contents were in their original condition, untampered with. The trial court overruled this objection, but we think should have sustained it.

With a view to the possibility of the ballots being thereafter needed as evidence, the statute makes careful provision for their safe-keeping and protection against the danger of their being tampered with. Section 21 of Act 152 of 1898 provides:

"The third tally sheet, together with the ballots and a poll list of the persons voting, shall be returned to the ballot box, which shall thereupon be sealed by the commissioners, and the said ballot box containing the ballots and tally sheets and poll lists, as aforesaid, shall be delivered to the clerk of court, to be by him safely preserved for a period of six months."

Section 23 of the same act provides:

"The clerk of the court shall receive the boxes containing the ballots cast at any election, and the other papers herein provided for, sealed as hereinbefore provided, and shall retain them in his care for six months, etc."

McCrary on Elections (4th Ed.) c. 14, par. 471, p. 348, says:

"Where, as is the case in several of the states, the statute provides a mode of preserving the identical ballots cast at an election, for the purpose of being used as evidence in case of contest, such statute, and particularly those provisions which provide for the safe-keeping of such ballots, must be followed with great care. The danger that ballots may be tampered with after the count is made, especially if the vote is very close, is so great that no opportunity for such tampering can be permitted. Such ballots, in order to be received in evidence, must have remained in the custody of the proper officers of the law from the time of the original count until they are produced before the proper court as evidence, and if it appear that they have been handled by unauthorized persons, or that they have been left in an exposed and improper place, they cannot be offered to overcome the official count."

The same author in No. 472 lays down the further rule that:

"The party offering such ballots in evidence must show affirmatively that they have not been tampered with, and that they are the identical ballots cast at the election in question."

And quotes Chief Justice Church approvingly, as follows:

"Every consideration of public policy, as well as the ordinary rules of evidence, require that the party offering this evidence should establish the fact that the ballots are genuine."

Continuing, McCrary says:

"The burden of proof in such a case does not rest upon the party objecting to the ballots as evidence"—citing Hartman v. Young, 17 Or. 150, 20 Pac. 17, 2 L. R. A. 596, 11 Am. St. Rep. 787; Beall v. Albert, 159 Ill. 127, 42 N. E. 166; Fenton v. Scott, 17 Or. 189, 20 Pac. 95, 11 Am. St. Rep. 801.

In No. 473 he says:

"The better opinion seems to be that, if the deviation from the statutory requirements relative to the manner of preserving the ballots has been such as necessarily expose them to the public or unauthorized persons, the court should exclude them."

Referring to the decision of People v. Holden, 28 Cal. 123, and commenting thereon, he says, in No. 475, p. 349, that:

"Before the ballots should be allowed in evidence to overturn the official count and returns, it should appear affirmatively that they have been· safely kept by the proper custodian of the law, that they have not been exposed to public or handled by unauthorized persons, and that no opportunity had been given for tampering with them. If this is believed to be a rule founded upon the presumption that a fraud or a crime has been committed, the answer is that the rule does no more than to make choice between two presumptions of law, which in this instance are in conflict, and cannot both prevail. In such a case the question is: Which is the stronger, the more reasonable and the safer presumption? And inasmuch as the ballots are counted by the board of canvassers immediately upon the closing of the polls, and generally before there had been an opportunity for tampering, and when it cannot be known that the changing of a few votes will change the result, and in most cases by a board composed of friends of each of the competing candidates, it is believed· that in the absence of all proof, in case of a conflict between the tally sheet and returns on one side, and the ballots as they are found to be at some period after the election is over, and after the state of the votes as returned has been made known, on the other, the correctness of the original official canvass made by sworn officers at the time of the election, should be presumed."

And in No. 476, on page 350, he says:

"In a more recent case arising under the same statute the Supreme Court of California refused to accept the result of a recount because it was not shown that the ballots had been in the inner room sealed up and preserved as required by law"—citing People v. Burden, 45 Cal. 241; and also Hudson v. Solomon, 19 Kan. 177.

In No. 478, quoting approvingly from the case of Hudson v. Solomon, above cited, he says:

"The original ballots are undoubtedly the best evidence, where their identity is clearly established. The governing rules are thus well stated by Brewer, Judge, in Hudson v. Solomon: (1) As to the ballots cast at an election and a canvass of those ballots by the election officers, the former are the primary and controlling evidence; (2) in order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and by the officers prescribed in the statute, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with. If there has been an opportunity for tampering with the ballots, they lose their character as primary evidence."

At No. 481, p. 353, he says:

"One of the most important and imperative requirements of the law of elections is that ballots from the time they are cast until they are canvassed must be safely and securely kept. Frauds upon the ballot boxes are very frequently perpetrated by tampering with the ballots after they are cast and before they are counted. * * * It is clear that where the law, which requires the ballots to be safely and securely kept until canvassed and the result announced, has been so grossly violated as to afford opportunity for fraud or tampering, the burden of proof should be shifted."

15 Cyc. p. 425, No. 13, under the heading, "Ballots as Evidence," (a) "When Properly Preserved," says:

"While the certificates of the various canvassing boards are conclusive on all collateral inquiries, they are only prima facie evidence in direct proceeding to contest an election. Hence in all cases where the right to an elective office is the subject-matter of an action, where the right is to be determined in any by the statutory proceeding to contest an election, or in and by an action, in the nature of a quo warranto, the ballots of the electors, if they have been properly preserved, are the primary and original evidence of the result of the election, and should prevail over the returns where there is a difference.

"(b) Statutes prescribing mode of preservation. It is well settled that statutes prescribing the mode of preservation of the ballots are directory merely, and if it be clearly and satisfactorily proven that they have been kept intact and inviolate, in the same condition as when counted, the ballots are admissible in evidence, although not preserved in the manner required by statute. The object of all such provisions is to secure the safe-keeping of the ballots, so that they may be easily identified in case there is need to resort to them as evidence in a judicial inquiry; and, if they have been safely kept and protected from any tampering, the chief object of the law is subserved, although omissions and irregularities may have occurred.

"(c) Burden of proving their genuineness. One who relies upon overcoming the prima facie correctness of the official canvass, by resort to the ballots, must first show that the ballots, as presented to the court, are intact and genuine; and, where a mode of preservation is enjoined by the statute, proof must also be made of a substantial compliance with the requirements of that mode.

See Tebbe v. Smith, 108 Cal. 101, 41 Pac. 454, 29 L. R. A. 673, 49 Am. St. Rep. 68;

Coglan v. Beard, 65 Cal. 58, 2 Pac. 737; People v. Holden, 28 Cal. 123; Rhode v. Steinmetz, 25 Colo. 308, 55 Pac. 814; Davenport v. Olerich, 104 Iowa, 194, 73 N. W. 603; Fenton v. Scott, 17 Or. 189, 20 Pac. 95, 11 Am. St. Rep. 801; Hartman v. Young, 17 Or. 150, 20 Pac. 17, 2 L. R. A. 596, 11 Am. St. Rep. 787; Farrell v. Larsen, 26 Utah, 283, 73 Pac. 227; Graham v. Peters, 248 Ill. 50, 93 N. E. 315; Baker v. Dinsmore, 138 Ky. 277, 127 S. W. 997.

"And, according to some of the cases, the party who offers the ballots in evidence must also show that they have not been tampered with."

See Fenton v. Scott, 17 Or. 189, 20 Pac. 95, 11 Am. St. Rep. 801; Hartman v. Young, 17 Or. 150, 20 Pac. 17, 2 L. R. A. 596, 11 Am. St. Rep. 787; Fishbach v. Bramel, 6 Wyo. 293, 44 Pac. 840; Eggers v. Fox, 177 Ill. 185, 52 N. E. 269.

"But, on the other hand, it has been held that while a substantial compliance with the provisions of the statute, respecting the preservation of the ballots, has been shown, the burden of proof is upon the party contesting the use of the ballots in evidence to establish that they have in fact been tampered with, or that they have been exposed under such circumstances that a violation of them might have taken place."

See Tebbe v. Smith, 108 Cal. 101, 41 Pac. 454, 29 L. R. A. 673, 49 Am. St. Rep. 68.

"However this may be, if the ballots have been placed in a position to be tampered with by interested parties, the burden of proof is on the party offering them in evidence to show that they are in the same condition as when sealed up by the several election boards."

See Albert v. Twohig, 35 Neb. 563, 53 N. W. 582.

"(d) Weight as evidence when not properly kept. If the deviation from the statutory rule of preservation has been such as necessarily to place the ballots in a position where they might have been tampered with by interested parties, they should receive little or no consideration, and it seems that the courts should exclude them."

See Powell v. Holman, 50 Ark. 85, 6 S. W. 505; Murphy v. Battle, 155 Ill. 182, 40 N.

E. 470; Albert v. Twohig, 35 Neb. 563, 53 N. W. 582; Hughes v. Holman, 23 Or. 481, 32 Pac. 298; Fenton v. Scott, 17 Or. 189, 20 Pac. 95, 11 Am. St. Rep. 801; Farrell v. Larsen, 26 Utah, 283, 73 Pac. 227; Martin v. Miles, 40 Neb. 135, 58 N. W. 732.

"For where the ballots have been so exposed to have afforded opportunity to be tampered with and have not been guarded with that zealous care, which will contravene all suspicion of substitution or change, they lose their presumptive purity, and are no longer to be relied on as evidence in a contest or judicial inquiry as to the result of the election, and cannot be allowed to prevail over the official canvass."

Authorities previously cited, and De Long v. Brown, 113 Iowa, 370, 85 N. W. 624; Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, 24 Ky. Law Rep. 1099, 75 S. W. 257, 25 Ky. Law Rep. 435; Dennis v. Caughlin, 23 Nev. 188, 44 Pac. 818; Id., 22 Nev. 447, 41 Pac. 768, 29 L. R. A. 731, 58 Am. St. Rep. 761; Howser v. Pepper, 8 N. D. 484, 79 N. W. 1018; In re Jenkins, 6th L. T. N. S. (Pa.) 33; Owens v. State, 64 Tex. 500.

See, also, on this subject, Newton v. Newell, 26 Minn. 529, 6 N. W. 346; Coglan v. Beard, 65 Cal. 58, 2 Pac. 737; Kingery v. Berry, 94 Ill. 515; Martin v. Miles, 40 Neb. 135, 58 N. W. 732; Spidle v. McCracken, 45 Kan. 356, 25 Pac. 897.

Cooley on Constitutional Limitations, p. 788, says:

"But back of this prima facie case (made by the certificates of the election) the courts may go, and the determination of the state board may be corrected by those of the district boards, and the latter by the ballots themselves, when the ballots are still in existence and have been kept as required by law. If, however, the ballots have not been kept as required by law and surrounded by such securities of the law as prescribed, with a view to their safe preservation as the best evidence of the election, it would seem that they should not be received in evidence at all"—citing, also, Powell v. Holman, 50 Ark. 85, 6 S. W. 505; Hendee v. Hayden, 42 Neb. 760, 60 N. W. 1034, quoted approvingly in Duson v. Thompson, 32 La. Ann. 871.

In the case of Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, 24 Ky. Law Rep. 1099, 75

S. W. 257, 25 Ky. Law Rep. 435, much resembling the one at bar in its facts, the court said:

"When ballot boxes containing ballots voted at an election were in the hands of the county clerk, whose re-election was also in contest, and the ballot boxes, although locked, could have been entered by taking off the hinges, which were exposed, the ballots should not be used to rebut the presumption of the correctness of the official returns until it is satisfactorily proved that they had not been tampered with since the election, and that those offered in evidence are the identical ones cast."

[1] From the foregoing law and facts the conclusion is absolutely inevitable that the ballots in said boxes should not have been admitted in evidence. Any person desiring to tamper with them was afforded the amplest opportunity to do so. It is said that the boxes showed no trace of this having been done. But this apparent good condition of the boxes is insignificant in view of the fact that these boxes could have been easily gone into and no trace left of the nefarious work. It is a part of such work, and a most important part, to leave no traces behind. Nor is it necessary to impute anything of the kind to the plaintiff. The high character of plaintiff protects him against any such imputation. It suffices for destroying the character of these ballots as evidence that full opportunity was afforded for their being changed, so that the court cannot, in the nature of things, have legal assurance of their not having been changed.

[2, 3] Learned counsel for plaintiff insist that the boxes which were opened and examined on the first trial had been just as loosely and negligently kept, and that the same rule should therefore be applied to them as to these unopened boxes. Were this done, the equilibrium of the evidence on the first trial would be so disturbed that the court would find it impossible to decide the case at all upon legal principles. That trial was conducted from first to last—we mean from the filing of the original pleadings down to the conclusion of the evidence, and, indeed, of the arguments—upon the theory of the ballots being admissible in evidence. Acting upon that hypothesis, both parties made allegations in their pleadings and admissions in the note of evidence which would now have to be disregarded, or, rather, which the court would not know now how to deal with, if the ballots in these other boxes are to be left out of the computation. The thing is impracticable. And, were it feasible, this court would be powerless to now retrospectively reject this evidence. The judgment rendered in this case on the last appeal is res judicata of the admissibility of all the evidence considered and acted upon by the court on that appeal. Moreover, said evidence was received without objection. By what right, therefore, could this court reject it? Finally, it is not true to say that said boxes were kept as loosely and negligently as those now in question. Up to the close of the first trial the boxes of the parish of Caldwell were kept in the manner prescribed by the hereinabove transcribed statute; that is to say, they were in the custody of the clerk of court. Those of the parish of La Salle were in like manner in the charge of their legal custodian, the clerk of court of the parish of La Salle, until delivered to the express company for transmission to the parish of Caldwell, where the trial of this case was being had. The express company delivered them to the clerk of court of the parish of Caldwell, to whose address they had been expressed, and the latter took them direct from the express company's office to the courtroom, where the trial was in progress, and there delivered them in open court, and into the charge of the clerk of court of the parish of La Salle, who was present and opened them for the court. Non constat that had objection been made to the reception in evidence of these boxes, it would not have

been possible to establish affirmatively that they had not been tampered with, or that there had been no opportunity for doing so, and thus the objection to them be overcome.

The learned counsel for plaintiff concede, as they must, that the judgment on the former appeal is a finality against their client, unless the contents of these unopened boxes is taken into consideration. The exclusion of these boxes is therefore decisive of the case, and dispenses us from further examination or discussion.

The judgment appealed from is therefore set aside, and the plaintiff's suit dismissed, at his cost.

See opinion of BREAUX, C. J., 60 South. 231, partly concurring and partly dissenting.