ODOM, J.
 

 Plaintiff and defendant were opposing candidates for the office of clerk of the district court of Richland parish at a second or runoff primary election held on February 23d. According to the returns made by the election officers to the Democratic Executive Committee, plaintiff received 1,183 votes and the defendant 1,188, and the committee declared defendant nominated by a majority of 5 votes.
 

 Plaintiff contested the election before the court alleging that he was nominated. He set up various grounds for this contest, among them being that there were mistakes made by the commissioners of election, that numerous spoiled ballots were counted for defendant, and that there were valid ballots cast for plaintiff which were declared invalid by the commissioners and not counted.
 

 Pursuant to the provisions of Act No. 97 of 1922, § 27, the Primary Election Law, he presented his petition to the district judge setting up these irregularities, and prayed for judgment- annulling and setting aside the promulgation of the returns made by the committee, and that he be declared the nominee. He served notice on defendant of his intention to take testimony in open court and asked the court to order that the Rayville box, containing more than 700 ballots, be brought into court, opened, and the votes recounted.
 

 Defendant vigorously protested the opening of this box on the ground that it had not been deposited with and kept by the proper officer, and that it had been in the hands of unauthorized persons and so exposed as to render it possible that it and the ballots therein had been tampered with. The objection was overruled, and the box was ordered opened and the votes counted. Later, the defendant, reserving his rights under the objection made, gave notice that he would ask that another box be opened and the votes recounted.
 

 
 *609
 
 Finally the district judge ordered all the thirteen boxes of the parish opened and the votes recounted in open court by four persons, two to be appointed by plaintiff and two by defendant. At the conclusion of the trial, the court set the election aside and ordered the executive committee to call another primary, at which plaintiff and defendant were to be the candidates. Both parties appealed.
 

 1. When an election is contested on the ground that part or all of the ballots cast and counted were improperly marked, spoiled for any reason, or intentionally marked for identification and for those reasons illegal, the ballots are admissible and are the best evidence. But, in order that they may be admitted as evidence, proof of their identity must first be made by the party offering them. But the ballots themselves cannot prevail over the official returns of the election made by the proper officers unless their identity is established with reasonable certainty, and this involves the question whether they have been preserved and safeguarded in the manner prescribed by law.
 

 The general rule which prevails in this state and elsewhere is that the burden is upon him who seeks to offer the ballots in evidence to prove with reasonable certainty that they have not been tampered with since the election, or that théir preservation has been "such as to exclude any reasonable opportunity of tampering with them, or that they have been so kept as to render it improbable that they could have been tampered with. It is not necessary, however, that the party show that tampering with them was impossible.
 

 The rule stated under the heading “Elections” in 20 O. J. 253, which is supported by decisions from fifteen states, including two from this state, is as follows:
 

 “Where the ballots have been so exposed as to have afforded opportunity to be tampered with and have not been guarded with that zealous care which will contravene all suspicion of substitution or change, they lose their presumptive purity and can not be allowed to prevail over the returns, and consequently if they have been placed in a position to be tampered with by interested parties, the burden is on the party offering them in evidence to show that they are in the same condition as when sealed up by the several election boards.”
 

 This text goes further and says that, when a substantial compliance with the provisions of the statute has been shown, the burden of proof is shifted to the party contesting the use of the ballots to show that they have been in fact tampered with “or that they have been exposed under such circumstances that a violation of them might have taken place, for the reason that where the ballots are produced from the proper custodian, it will be presumed, in the absence of any specific evidence as to their having been tampered with, that they have been honestly preserved, although this presumption may be overcome by proof that they have been tampered with.”
 

 In the case of Thornhill v. Wear, 131 La. 739, 60 So. 228, the court discussed at great length the point here involved citing innumerable decisions from other jurisdictions, as well as various text-writers. In three later cases, Koepp v. Crawford, 138 La. 852, 70
 
 *611
 
 So. 858; Reeves v. Dean, 138 La. 889, 70 So. 871, and Perez v. Cognevich, 156 La. 331, 100 So. 444, the same question was involved, and the court held the rule to be substantially as above stated.
 

 2. Now the question arises whether, under the law and the facts disclosed in the case at bar, the ballots were admissible in evidence. If they were not and should have been .excluded, then it follows necessarily that plaintiff has no case, and that the returns made by the election officers as promulgated by the executive committee are the best evidence as to who was nominated.
 

 3. We hold that these ballots were not admissible, but in so holding wé do not intend to impute to any one fraud or bad faith.
 

 By section 25, Act No. 97 of 1922, the Primary Election Law, the Legislature prescribed the method by which ballots are to be safeguarded after they are cast, and the method is not merely directory, it is mandatory. It provides:
 

 “The ballot boxes containing the ballots, poll list and tally sheet, shall be carefully sealed after the count shall have been completed and the returns signed and sworn to, shall be deposited with the respective clerks of the District Courts throughout the State and in the Parish of Orleans with the Clerk of the Criminal District Court, by the commissioners of election.”
 

 The facts are that some at least of the boxes were not sealed by the commissioners. All the boxes were equipped with hasps or staples and padlocks. The boxes seem to have been locked by the commissioners, but the keys were tied with a string to the hasp and left there, which is equivalent to leaving them unlocked or open. The boxes were carried by commissioners in some cases and by deputies in others from the polling places to the clerks’ offices and there deposited, not. with the clerk in person or any of his deputies, but on the floor in the lobby where numerous interested persons had assembled to hear the results of the election. Those, assembled used some of the boxes as seats. A deputy clerk was present in the clerk’s private office which adjoins the main office or lobby, and the boxes were placed within his view and remained there for some time.' But he says he paid no particular attention to them, but was satisfied that they were not tampered with while there.
 

 In view of the fact the clerk was an interested party, the question as to what disposition of the boxes should be made arose, and it was suggested that they be delivered into the custody of the sheriff, whose office was in the same building, the courthouse. Whereupon all the boxes, thirteen in number, were carried to the sheriff’s office and there deposited on the floor, not in his private office, but in the assembly room or lobby. A deputy sheriff was then present. He remained for a while and had occasion to leave, whereupon he called in a man named Oliver, who was not a deputy, and requested him to watch the boxes while he was out. Oliver complied, but just how long he remained is not shown. Later on, about 10 o’clock, the deputy closed and locked the office, leaving all the boxes where they had been deposited. There they remained during the night with the keys still tied to the hasps.
 

 On the following morning, the chairman of the executive committee, in the presence of these litigants, opened some of the boxes
 
 *613
 
 and removed therefrom the tally sheets. The boxes which were opened were then locked and the keys from all the thirteen were removed. Later in the day the boxes were removed from the sheriff’s office and placed in the jail which is a separate building, but only a few feet away. There they remained until brought into the courtroom at the trial.
 

 The testimony shows that there is a toilet and washroom in the jail used mainly by court officers; that the main door to the jail is ordinarily kept locked and the key kept in the sheriff’s office; that on occasions outsiders are permitted to take the key and go into the jail in order to use the toilet, and that no one accompanies them. The boxes while in the jail were exposed to those whe went in.
 

 In addition to the key to the jail kept in the sheriff’s office, the town marshal had one which gave him free access thereto at all hours. As stated, the boxes, with the keys attached, remained in the sheriff’s office all night. The office door was locked, but there are six keys, one carried by the colored janitor and the others by the sheriff and his deputies. The janitor goes down early each morning, before the arrival of the sheriff or any of his deputies, opens tl}e office, and cleans it up.
 

 There were, therefore, radical departures from the statutory requirements for the preservation of these ballots. The boxes or some of them were not sealed by the commissioners, and, while all of them were locked, the keys were left on them, which amounted to the same as not locking them at all or leaving them open. While in that condition, they were in the hands of unauthorized persons who were under no legal obligation to protect them. Neither the sheriff nor any of his deputies pretended to safeguard the boxes further than to permit them to be deposited on the floor of their outer office or lobby. They were never taken into the sheriff’s private office and there locked up. During a portion of the time while in the sheriff’s office, they were left in charge of one who was not a deputy, and during all the time they were there the keys were tied with a string to the hasps. While in the jail they were exposed to outsiders who chanced to go in.
 

 Without intending to cast suspicion upon the sheriff, his deputies, or any one else, our holding is that these ballots were not admissible in evidence because they were not protected in the manner prescribed by law; that they were left in the hands of unauthorized persons, exposed at times to the public, and never zealously safeguarded. Whether the boxes and ballots were in fact tampered with is not the question. The point is that they were so exposed' as to have afforded an opportunity to be tampered with.
 

 The following quotation from McCrary on Elections, page 346, is pertinent:
 

 “The danger that the ballots may be tampered with after the count is made known, especially if the vote is very close, is so great that no opportunity for such tampering can be permitted. Such ballots in order to be received in evidence, must have remained in the custody of the proper officers of the law from the time of the original count until they are produced before the proper court of officer and if it appear that they have been handled by unauthorized persons or that they have been left in an exposed and improper
 
 *615
 
 place, they can not be offered to overcome the official count.”
 

 The law requires us to decide cases of this hind within 24 hours from the time they are submitted. We did so in this case, assigning at the time oral reasons, reserving the right to later assign written reasons.
 

 We here quote the decree handed down:
 

 “For the reasons orally assigned and to be set forth in an opinion hereafter to be filed, the judgment herein appealed from is reversed and it is now ordered that plaintiff’s demands be rejected at his costs in both courts.”
 

 O’NIELL, C. J., absent.
 

 ST. PAUL, J., dissents.