## HARRINGTON et al. v. LANGLINAIS.

### No. 1430.

Court of Appeal of Louisiana.
First Circuit.
Dec. 4, 1934.

R. J. La Bauve, of Abbeville, and Percy T. Ogden, of Crowley, for appellants.

J. I. Boudreaux, of Abbeville, Pugh & Buatt, of Crowley, and J. E. Kibbe, Jr., of Abbeville, for appellee.

MOUTON, Judge.

This suit was instituted under the provisions of Act No. 111 of 1934, known as the Corrupt Practice Law, to have the nomination of A. G. Langlinais, as the nominee for member of the School Board for the Sixth Ward of the Parish of Vermilion, annulled or forfeited for numerous alleged violations of that statute, detailed in the petition of the complainants.

As we had, under the statute, twenty-four hours within which to dispose of the case from its submission, through Judge LE

BLANC, organ of the court, a short opinion was rendered, as follows (LE BLANC, Judge):

"This is a suit instituted by twenty-nine duly qualified electors of the Sixth Ward of the Parish of Vermilion, under the provisions of Act No. 111 of 1934, known as the Corrupt Practice Law, to have the nomination of A. G. Langlinais as member of the Parish School Board for that ward in the Democratic primary of September 11, 1934, forfeited on the ground that he, as a candidate, had committed numerous violations of that law, all of which are set out in detail in their petition.

"Section 41 of the act regulates the procedure of such suits before the district and the appellate courts, and all formalities seem to have been properly observed. We note, under the provisions of that section, that·it is made the duty of the appellate court to render judgment within twenty-four.hours after submission of the case, a requirement which makes it next to impossible to hand down a written opinion such as would present a full review of the law and the evidence involved. Especially is that so in the present case in which we have before us for consideration a plea to dismiss the appeal, an exception of no cause of action, and a transcript comprising over 150 pages of testimony.

"For the present we will satisfy ourselves by handing down oral reasons, supplemented with this short opinion which accompanies this decree, reserving the right to later file ·a written opinion which will fully cover all the issues in the case. This was the procedure adopted by the Supreme Court in the case of McConnell v. Salmon, 174 La. 606, 141 So. 73, and followed by us in the case of Welch v. Fitzgerald, 144 So. 73, in which the decree was handed down on October 15,.1932.

"Plaintiffs' suit was dismissed in the district court on the merits and the appeal is on their behalf. Only three of the twenty-nine are mentioned in. the appeal bond and they are the only ones who signed the bond as principals. The bond is otherwise proper in all respects and is supported by sufficient surety.

"The form in which the bond is drawn forms the basis of the defendant's motion to dismiss the appeal, the contention being that the names of all the appellants should appear on the face of the bond even though it be not signed by them all as principals. We note that the order of appeal was granted on motion of counsel for plaintiffs, meaning all of them we presume, and we are of the opinion that the filing of the bond in the form in

28

which it appears was sufficient to support the appeal, a remedy that is always favored under the law.

"The exception of no cause of action appears to have been properly overruled in the lower court. It is based on the proposition that the act invoked by the plaintiffs does not apply in this case as it had not become operative at the time the defendant qualified as a candidate in the primary election called for September 11, 1934. Section 46 of the act, however, provides that the 'Act shall apply to all elections authorized or required to be held under any existing or future laws of this State,' and as the primary of September 11, 1934, was an election authorized to be held under an existing law of the state, certainly by the terms of that section, the provisions of the act did apply.

"On the merits of the case, we will only say for the present that a careful reading and consideration of the testimony has led us to the conclusion that the plaintiffs have failed to support, by a fair preponderance of the testimony, the only three remaining of the numerous charges in their petition on which they rely to have the defendant's nomination forfeited. We are convinced that there is no manifest error in the finding of fact on the part of the district judge which would justify a reversal of the judgment.

"Judgment affirmed."

We have little to add to what was said by us in reference to the motion filed for the dismissal of the appeal, and nothing on the exception of no cause of action.

■ The motion to dismiss was based on the contention that the names of all the appellants should have appeared on the face of the bond.

The proof shows that the names of only three of the plaintiffs and appellants are set out in the bond.

Counsel in support of their motion to dismiss refer to Voelkel et al. v. Voelkel et al., 18 La. Ann. 639, where the court said: "Only those are parties to the appeal whose names are inserted in the bond." And citing, to the same effect, Robert v. Ride, 11 La. Ann. 409.

Under this doctrine, the appellants, whose names appear in the bond, are parties to this appeal.

In the case of Walton v. Police Jury, 26 La. Ann. 355, the court said, in part, that the "appellant has the right to prosecute his appeal which is regularly taken, although his co-defendants may acquiesce in the judgment."

Here, if the plaintiffs whose names are not mentioned in the bond intended to acquiesce in the judgment, their three coplaintiffs who have appealed should not be deprived of their right of appeal.

In this case, it should be observed that plaintiffs are not contestants for the office and have no pecuniary interest involved, nor a position of trust or honor in so far as they are personally concerned. Their complaint, it would seem, was filed for the protection of the primary against corrupt practices, which so far, it is regrettable to say, has been the iridescent dream of members of election leagues and other political reformers in this state.

The constitutional right of appeal is always favored, as was said in our original opinion, hereinabove reproduced. In a case of this character in which is involved the political rights of the public in general, the right of appeal, it occurs to us, should receive a more liberal construction, if permissible, than is usually allowed; hence, this appeal should not be dismissed on the plea upon which the present motion to dismiss is grounded.

■ On the exception of no cause of action, we find it unnecessary to add anything to what was said on the subject in our original opinion in support of the judgment below overruling the exception.

### Merits.

In their petition, plaintiffs sought the forfeiture of the nomination of defendant, A. G. Langlinais, as member of the School Board for the Sixth Ward Parish of Vermilion.

This attack is based on various charges against defendant for acts alleged to have been committed by him in violation of the provisions of the Corrupt Practice Statute of 1934 (No. 111).

It is averred in the petition that unlawful contributions in furtherance of his candidacy had been sought by the defendant from a large number of teachers and bus drivers who at the time were employees of the School Board of the Parish of Vermilion, of which defendant, A. G. Langlinais, was then a member.

Among the various employees of the School Board from whom it is alleged defendant attempted to unlawfully obtain contributions to his campaign funds were Mrs. C. J. Labauve and Miss Rosa Mills, averred by plaintiffs to have been at that time employees of the School Board of the Parish of Vermilion.

The only issue presented for solution in this case is in reference to the charges of the contributions sought from Mrs. C. J. Labauve and Miss Rosa Mills, the charges against the other alleged employees of the School Board having passed out of the case. We shall also be restricted in the examination of this case to the consideration of the evidence to the alleged violations of sections 23 and 35 of said statute, as suggested in the brief of counsel for plaintiffs.

Mrs. C. J. Labauve testifies that on September 1, 1934, on a Saturday, at noon, the defendant, Mr. A. G. Langlinais, in company with his son, Ben Langlinais, and Mr. Couvillon, called at her home. Mr. Langlinais, the defendant, Mrs. Labauve says, told her he was out soliciting funds for his campaign as a candidate for membership on the School Board; that he asked her to contribute thereto in the sum of $10 and that she told him she did not have the $10, but that her husband "might fix him on that"; that Mr. Langlinais told her he did not want the money from her husband. After telling him she did not have the money in her house, she says that defendant then asked for an order on her first check for that amount. To this she replied, according to her testimony, that she could not give this order without her husband's consent, and that defendant said her husband had nothing whatsoever to do "with that." "I stood pat," she says, "and wouldn't listen to what he told me."

This ended the conversation of September 1, 1934, as far as what was said is pertinent to the issues herein.

Mrs. Labauve was alone when this conversation took place, as testified to by her.

■ The defendant testifies that the call on Mrs. Labauve occurred on August 29, 1934, and not on September 1, 1934, as testified to by Mrs. Labauve. The date on which the call was made is immaterial.

The defendant says he went to the home of Mrs. Labauve in company with Ben, his son, and Mr. Paul Couvillon, at about the hour mentioned by Mrs. Labauve. He denies positively and absolutely that he solicited from her a contribution of $10 to his campaign fund, or for an order from her to that amount on her salary check.

The same denial is made by Ben Langlinais, his son, who says the purpose of the visit on that occasion was to have Mrs. Labauve exchange her position at Forked Island where she was teaching and to give him that position, provided another position could be found in the parish for her.

Mr. Couvillon, who was present on that occasion, did not testify, and from that circumstance counsel for plaintiffs argue that it must be accepted that he would not have confirmed the version of the conference given by defendant and his son, Ben. It is true that defendant could have called Mr. Couvillon to testify, but it is equally true that plaintiffs could also have availed themselves of his testimony in corroboration of the evidence given by Mrs. Labauve, that the solicitation of a contribution had been made of her by defendant for his campaign fund. This solicitation was the charge made by plaintiffs in support of part of their averments, that defendant had violated the provisions of the Corrupt Practice Law.

As it was incumbent upon them to support this charge by proof of the asserted violation of the statute, it seems to us that it is more in keeping with the rules of pleading and proof that they should have called on Mr. Couvillon to substantiate their specific allegation for this infraction of the statute.

The defendant and his son entered an absolute denial of this charge and rested their case on this issue.

■ In any event, we are not aware of any rule of law which made it incumbent on either party to clarify the situation under the circumstances above stated, and have not been referred to any on this subject, and do not find that it must be held that defendant was required to produce Mr. Couvillon as a witness to support their denial. Such being the legal situation, as we find it, we have here the testimony of two witnesses in denial of the evidence of Mrs. Labauve, one witness, and without any fact or circumstance in this record to support her testimony on this point on which plaintiffs have failed to make out their complaint, if we are to rely on the testimony of Mrs. Labauve, refuted as it is by that of A. G. and Ben Langlinais.

Mr. Alphe Broussard testifies that having heard of the serious charge that was being circulated to the effect that the defendant, Mr. Langlinais, had solicited a contribution from Mrs. Labauve of campaign funds, in company with Messrs. H. J. Campbell, George Broussard, Kenneth Nuney, and Martin Primeaux, they called on the night of September 7, 1934, at the home, in Abbeville, of Mrs. C. J. Labauve. He says that he there stated to Mrs. Labauve that rumors were going around to the effect that defendant, Mr. Langlinais, had solicited or tried to force her to contribute to his campaign fund. He says Mrs. Labauve stated there, in the presence of Messrs. George Broussard and Ezra Campbell, that

defendant had not made any such solicitation and that, "she said, of course not, A. G. Langlinais and his son, Ben, and Mr. Couvillon, were here the other day in regards to my exchanging positions with his son, Ben, at Forked Island."

This testimony of Mr. Alphe Broussard about his conversation with Mrs. Labauve on the night of September 7th is confirmed by Mr. George Broussard in every substantial particular.

Mr. Ezra Campbell, also present on that occasion, is positive that Mrs. Labauve told Mr. Alphe Broussard that the defendant, Mr. A. G. Langlinais, "had," to quote his language, "never solicited any campaign funds from her."

Plaintiffs refer to the fact that Messrs. Alphe and George Broussard are the nephews of defendant.

 Usually, relatives are those who are enthusiastically interested in political campaigns for the benefit of candidates allied to them by blood or affinity, which may account for the interview obtained by Messrs. Broussard with Mrs. Labauve in reference to the damaging rumors which they had heard were circulating about the conduct of defendant, who, the record shows, was their uncle by marriage. The fact they were so connected with defendant affords no reason for discrediting their testimony, particularly as it is supported by the evidence of Mr. Ezra Campbell, who it is not shown is a relative of defendant by blood or otherwise.

It is clearly shown, by the testimony of Messrs. Alphe and George Broussard and Mr. Ezra Campbell, that Mrs. Labauve had said on their visit at her home on the night of September 7, 1934, that the defendant had not solicited any contribution from her on his visit to her home with his son, Ben, on August 29, 1934, or September 1, 1934, nor at any other time.

It also appears from the evidence of Messrs. Alphe and George Broussard that she, at that interview, had admitted that the purpose of defendant's visit with his son on September 1, 1934, was in reference to obtaining an exchange of positions, as was explained by defendant and his son, Ben Langlinais.

The testimony of defendant and his son as to what really occurred at this interview with Mrs. Labauve on September 1st is fully corroborated and confirmed by the proof of her admissions to the other witnesses, made subsequently to them on September 7, 1934, at the night visit at her home in Abbeville.

On this, a vital issue in the case, the evidence of Mrs. Labauve finds its full refutation by the preponderance of the evidence given by five witnesses for defendant, and against which there are no discrediting facts or circumstances, reflected by this record.

Mrs. J. C. Labauve testifies that later, on Saturday, September 8, 1934, three days before the primary which took place on Tuesday, September 11, 1934, defendant, Mr. Langlinais, called at the home of her father-in-law, Mr. J. G. Labauve, in company with Mr. Alphe Broussard. The parties present were defendant, Mr. Alphe Broussard, her husband, her mother-in-law, and her father-in-law, Mr. J. G. Labauve. According to her testimony, the defendant on that occasion said to her that she had taken some votes from him by canvassing against his candidacy and that he wanted her to undo everything that she had done by going "openly in his favor," and that she replied she would not do anything of the kind. She testifies that defendant then said, "If you don't I will break your contract for this year and I can do it right now."

Her mother-in-law did not testify, but her testimony as to what she said occurred at this second interview at the home of her father-in-law, is supported by his testimony, and that of her husband.

Mr. Alphe Broussard, who was present on that occasion, flatly denies that defendant, Mr. Langlinais, questioned Mrs. Labauve about her canvassing against him or threatened to have her discharged as teacher or of breaking her contract. He says the purpose of the visit on that occasion was to find out if Mrs. Labauve intended to give up her job as it was rumored.

It is likewise denied by the defendant that at this conference he threatened to break Mrs. Labauve's contract if she refused to give him her support and that his purpose in going there at that time was to ascertain if Mrs. Labauve intended to give up her position as school teacher. His testimony on this issue is in line with the evidence of Mr. Alphe Broussard.

In this instance there are, it is true, three witnesses for plaintiffs, as against two for defendant. It must, however, be noted that in reference to the first visit by defendant and his son on September 1, 1934, at Mrs. Labauve's home, her testimony as to what transpired was completely contradicted and refuted by five witnesses. As her testimony had undergone such a refutation by a large preponderance of the testimony, it is reasonable

to infer that the lower court's reliance in her credibility had been considerably shaken, which led it to the acceptance of the denial by defendant and Mr. Alphe Broussard of her statement that at the second visit on Saturday, September 8, defendant had gone to the extent of threatening to break her contract as a teacher if she refused to support his candidacy.

However that may be, the solution of the question as to what really occurred at these visits or conferences is dependent entirely on the credence to be given to the testimony adduced thereon.

■ It is well settled that the credibility of witnesses is a matter that falls largely within the province of the trial judge, who has the advantage of hearing them testify and also of observing their demeanor on the witness stand, advantages of which the appellate courts are deprived. In such cases, the rule is to allow the finding of the trial court on questions of fact as are here presented, undisturbed, unless there are facts and circumstances which effectively destroy the credibility of the witnesses who have testified in the case. Here the record is barren of such facts or circumstances and this court will not indulge in an adverse conclusion on such an issue.

The next charge is that defendant solicited campaign contributions from Miss Rosa Mills, at the time assistant to the Superintendent of the Public Schools of the Parish of Vermilion.

Miss Mills testifies that defendant, Mr. Langlinais, came to her office and asked her if she would give him money to assist him in his campaign and that as she said she had none, the defendant, she testifies, said, "what about giving me a check?"

Counsel for plaintiffs says, to be frank with the court, it must be said that Miss Mills was not positive if the solicitation took place in the latter part of August or the first days of September, 1934.

We do not think that the question, as to whether she was correct or incorrect about the date, is of any importance in this case, and we will therefore now pass to the consideration of the evidence in reference to the alleged solicitation for campaign funds by defendant from Miss Mills.

Her testimony is that she is certain that Mr. John Dartez was present when defendant, Mr. Langlinais, solicited the contribution to his campaign fund as a candidate for member of the School Board.

Mr. John Dartez testifies that while with the defendant at the office of Mr. Williams, who was Superintendent of the Public Schools, defendant had a conversation about his candidacy with Miss Mills, who asked him if he thought he would be nominated. He is, however, positive that, in that conversation, the defendant did not ask Miss Mills for any contribution of money to his campaign funds and is equally positive that nothing was mentioned about getting a check from Miss Mills as a contribution. Mr. Dartez says this is the only visit he ever made to the Superintendent's office, which makes it certain that the conversation, referred to in the testimony of Miss Mills, took place at the time stated by Mr. Dartez.

The defendant also denies positively that at that conversation, or at any time, he ever solicited any contribution in cash or by check from Miss Mills.

The testimony of Miss Mills about these solicitations is therefore specifically contradicted by defendant and John Dartez, who Miss Mills is sure was in company with defendant at the time when she claims these contributions were sought from her. Here, we have the testimony of two witnesses against one on the charge, that this request for contribution of cash or by check was made by defendant from Miss Mills; and likewise on the same proposition which Mrs. J. C. Labauve testified had been made to her by defendant at the interview at her home on September 1, 1934, and it is appropriate to remark, in connection with the charge that defendant had made such a request, that three other witnesses testified that at the conference they had with Mrs. Labauve on the night of September 7, 1934, she had admitted that defendant had never, prior thereto, solicited any contributions from her in cash or by check.

It is only at the conference of September 8, 1934, at the home of Mr. J. G. Labauve, father-in-law of Mrs. Labauve, that three witnesses testified in reference to what had occurred there, as against two for defendant; but as observed hereinabove in the course of this opinion, it is very likely that the lower court was not favorably impressed with the testimony of Mrs. Labauve considering the complete refutation she had suffered from the contradiction of five witnesses and by her admission in the presence of three witnesses, that she had not been importuned for any contributions by defendant at any prior time.

■■ This reference to the number of witnesses testifying for plaintiffs and defendant is made with full realization and apprecia-

tion of the rule which refuses to accept the number of witnesses as a proper criterion for the solution of a contested issue, but in a case depending entirely on questions of fact, as herein presented for solution, where neither set of witnesses is corroborated by facts or circumstances revealed by the record, the credibility of the witnesses is the only issue involved and which, under the well-settled doctrine governing in such instances, falls within the province of the trial judge, and no reversal can be expected from the appellate courts.

For the foregoing reasons, the judgment rejecting plaintiffs' demand is correct and was correctly affirmed in our original opinion.