PER CURIAM.
For a more complete statement of this case, see our decree rendered on February 15, 1952, La.App., 57 So.2d 233, wherein the appeal was dismissed in view of the fact that there was no final judgment rendered and signed. Since then, however, the judgment has been rendered and signed against plaintiff, dismissing this suit and he has appealed to this court.
This is an election suit brought under the provision of LSA-R.S. 18:364, in which the plaintiff, or contestant, a defeated candidate for nomination to the office of member of the Ascension Parish Police Jury from Ward 10 of Ascension Parish, Louisiana, in the Democratic primary election held on January 15, 1952, seeks a recount under court supervision and for judgment declaring petitioner to be the nominee for the party to said office.
The case was taken up for trial on the merits, evidence was introduced in an effort to show that the three election precinct boxes of Ward 10 of Ascension Parish or the contents of said three boxes had not' been tampered with nor were the boxes exposed to possible tampering. After the completion of the taking of evidence on behalf of both plaintiff and defendant, the three election precinct boxes were offered for recounting, whereupon the defendant objected to plaintiff’s offer and to a recount of said three election precinct boxes because plaintiff had failed to prove that these three ballot boxes were guarded after completion of the count so carefully as to exclude any reasonable opportunity to tamper therewith.
The lower court sustained the objection for the following reasons:
“1. The law provides that the ballot boxes shall be deposited by the commissioners with the respective Clerks of the District Courts.
“2. That the evidence clearly establishes the fact that these boxes were delivered to the branch office of the Sheriff of Ascension Parish in Gonzales, Louisiana. They were then placed in the Veteran’s Administration Office in the American Legion Building, which is some twelve or more miles distant from the Court House in Donaldsonville, Louisiana, where the Clerk of Court’s Office is.
“3. That sometime during Thursday, January 17th, 1952, two (2) days after the election of January 15th, 1952, between the hours of four or five o’clock in the afternoon, these ballot boxes were delivered by a Deputy Sheriff to the Clerk of Court’s Office in Donaldsonville. That deputy was not the special deputy appointed by the Parish Democratic Executive Committee, *236 but was simply a deputy of the Sheriff of this parish. Therefore, from the time these ballot boxes were delivered to the Sheriff’s Branch office in Gonzales, Louisiana, placed in the Office of the Veteran’s Administration until they were delivered to the Clerk of Court on Thursday, January 17th, 1952, these boxes were in the hands of unauthorized persons, and consequently were so exposed as to render it possible that the boxes and the ballots therein could have been tampered with.
“4. That the ballot boxes in Precinct 3 of Ward 10, Ascension Parish shows clearly visible evidence of the fact that if it was sealed by the commissioners of election as the law required, the seal has been broken and it is now not sealed, and the envelope covering the slot through which the ballots are deposited is entirely off. The ballot box in Precinct 2 of Ward 10 has no key and there has been no explanation as to the whereabouts of that key.
“5. The evidence shows that all these ballot boxes, even after they were delivered to the Clerk of Court, were placed in a room some distance removed from the Clerk’s private office, where they were accessible to the public and subsequently so exposed as to afford an opportunity to be tampered with. It is the Court’s opinion that the statutory provisions regarding the safeguarding of the ballot boxes after the ballots have been counted is not merely directory, but is mandatory and the law must be observed in order to preserve the purity of the ballot. The court desires to make it plain, however, that in making this ruling, I do not intend to impute to anyone, whether it be commissioners, deputies, or Clerk of Court, or any one else, any fraud, or bad faith.”
Therefore the question presented to this court is the correctness of the lower court’s ruling.
Under LSA-R.S. 18:364, Sec. B, it is provided: “However, before any box is thus recounted satisfactory evidence shall be produced to the court that the box or the contents thereof have not been tampered with or disturbed subsequent to its closing by the commissioners.”
In accordance with McConnell v. Salmon 174 La. 606, 141 So. 73, which was followed by this court in Welch v. Fitzgerald, La.App., 144 So. 73, and in Hill v. Vernon Parish Democratic Executive Committee, La.App,, 56 So.2d 868, it is stated: “The general rule which prevails in this state and elsewhere is that the burden is upon him who seeks to offer the ballots in evidence to prove with reasonable certainty that they have not been tampered with since the election, or that' their preservation has been such as to exclude any reasonable opportunity of tampering with them, or that they have been so kept as to render it improbable that they could have been tampered with.” [174 La. 606, 141 So. 74.]
Again in the same case, the Supreme Court said: “Without intending to cast suspicion upon the sheriff, his deputies, or any one else, our holding is that these ballots were not admissible in evidence because they were not protected in the manner prescribed by law; that they were left in the hands of unauthorized persons, exposed at times to the public, and never zealously safeguarded. Whether the boxes and ballots were in fact tampered with is not the question. The point is that they were so exposed as to have afforded an opportunity to be tampered with.
The following quotation from McCrary on Elections, page 346, is pertinent: “The danger that the ballots may be tampered with after the count is made known, especially if the vote is very close, is so great that no opportunity for such tampering can be permitted. Such ballots in order to be received in evidence, must have remained in the custody of the proper officers of the law from the time of the original count until they are produced before the proper court or officer and if it appear that they have been handled by unauthorized persons or that they have been left in an exposed and improper place, they can not be offered to overcome the official count.”
In the case of Thornhill v. Wear, 131 La. 739, 60 So. 228, 231, the Supreme Court said: “From the foregoing law and facts the conclusion is absolutely inevitable that the ballots in said boxes should not have *237 been admitted in evidence. Any person desiring to tamper with them was afforded the amplest opportunity to do so. It is said that the boxes showed no trace of this having been done. But this apparent good condition of the boxes is insignificant in view of the fact that these boxes could have been easily gone into and no trace left of the nefarious work. It is a part of such work, and a most important part, to leave no traces behind. Nor is it necessary to impute anything of the kind to the plaintiff. The high character of plaintiff protects him against any such imputation. It suffices for destroying the character of these ballots as evidence that full opportunity was afforded for their being changed, so that the court cannot, in the nature of things, have legal assurance of their not having been changed.” (Italics ours.)
Under LSA-R.S. 18:354(4), under which the election in this case was held, the manner in which the integrity of the ballots is to be preserved is as follows: “The ballot boxes containing the ballots, poll lists, and tally sheets shall be carefully sealed after the count has been completed and the returns signed and sworn to. The ballot boxes shall be deposited by the commissioners with the respective clerks of the district courts, and in the Parish of Orleans with the clerk of the criminal district court, to be safely preserved and kept sealed and intact for thirty days. The watchers may accompany the commissioners in the delivery of the ballot boxes.”
In the case of Hill v. Vernon Parish Democratic Executive Committee, supra, we said: “Davis does not appear to have had any qualifications as one of the officers of the election which had been held. As far as Davis was concerned he was unauthorized to act in any capacity and during the time that the 'ballot box and key were in his hands, it cannot be said to have been in the custody of the proper officers of the law. Moreover it is to be observed that our Primary Law hereinabove quoted makes it the duty of the Commissioners to deposit the ballot box properly sealed with the Clerk of the Court, and the inference to be drawn from that is that it is to remain in their custody until so deposited with the only officer authorized by law to receive it.”
In view of the foregoing and mandatory provisions of the law just quoted before us, let us now devote our attention to the facts in the case.
Defendant, Leon De Armand, was the victor by one vote over plaintiff, upon the returns of election commissioners in the three election precincts comprising the Tenth Ward of Ascension Parish.
The Commissioners of Election at the three election precincts of Ward 10 of Ascension Parish failed to bring the three election boxes, or any of them, after the completion of the count as required by law to the office of the Clerk of Court at Don-aldsonville, Louisiana. To the contrary however, two of them, the boxes from Ward 10, Precinct 1 and Ward 10, Precinct 3 were deposited at about nine or ten A. M. on Wednesday morning, January 16, 1952, and the box from Ward 10, Precinct 2 on Wednesday evening, January 16, 1952, at about 5:00 P. M. in the Veteran’s Administration Office in the American Legion Building at Gonzales, Louisiana.
It appears that the Sheriff of Ascension maintains a suboffice in Gonzales and same is located in the American Legion Building. All three boxes were delivered to a deputy sheriff in said office and the ballot boxes then placed in the Veteran’s Administration Office near the Sheriff’s Office.
It appears from the evidence that the Veteran’s Administration Office is located on one side of the hall alongside of the Sheriff’s Office. One can not get from the Sheriff’s Office into the Veteran’s Administration Office without going through the hall. The hall is open to the public and there is a public toilet down the hall from the Veteran’s Administration Office. The building is also occupied by the City of Gonzales and the State Revenue Department. It is noted also that the Veteran’s Administration Office where the ballot boxes were placed on Wednesday, January' 16, 1952, is never locked, and that the ballot boxes remainded in said room unguarded until the evening of Thursday January 17, *238 1952, when a Deputy Sheriff of the Parish of Ascension (not a deputy sheriff of election) took them to Donaldsonville, a distance of about 12 miles, and deposited the three boxes with the Clerk of Court of Ascension Parish. The Clerk then placed the boxes in the old vault in the Court House. We are informed by the record that the old vault remains open to the public from eight in the morning to five_ in the afternoon, with no one present to provide surveillance over said boxes at any time.
One of the boxes, Ward 10, Precinct 3, had no seal over the ballot hole entrance. The seal had been broken. Another of the boxes, Ward 10, Precinct 2, after the completion of the count at 4:00 A. M. on Wednesday morning, was taken unsealed to the home of the deputy sheriff who- had the lock and key to said box in his possession. The box was returned the next morning to the election polling place in Ward 10, Precinct 2, where it remained unsealed until the afternoon of Wednesday, January 16, 1952. The key to this box was supposed to be placed in an envelope and sealed to the box but when the box was brought in court, the key was missing and has never been located.
From these facts, it can not be said that these ballot boxes were in the custody of the proper officers of the law during the time that they were in the American Legion Building in Gonzales, Louisiana, nor until they were delivered to- the Clerk of Court some two days after ’the election. Can it be said that after the Commissioners completed their official count that these ballot boxes were never exposed to the public but were always safeguarded by the proper officers? Can it be said that these ballot boxes were not so exposed as to' afford an opportunity to be tampered with? We think the answer is obvious. The ballot boxes were not handled by the proper officers of the law after they were placed in the American Legion Building in Gonzales, Louisiana, and until they were delivered to the Clerk of Court of said parish. We are likewise of the opinión that the boxes were so exposed as to have afforded an opportunity to be tampered with.
In view of our findings and in further view of the law as herein stated, we believe that the ruling of the lower court excluding these ballot boxes for the purpose of a recount was correct.
Judgment affirmed.