PER CURIAM.
In compliance with the provisions of LSA-R.S. 18:364, subd. E, requiring disposition of cases of this character within 24 hours after submission, we herewith hand down our decision, the reasons for which will follow in due course.
The judgment of the district court is affirmed. All costs of this appeal are assessed to appellant.
Affirmed.
HOOD, Judge.
Plaintiff, Stanley Constantin, instituted this action under the provisions of LSA-R.S. 18:364 seeking a recount of all the boxes and all of the ballots (including ballots cast on the voting machines, absentee ballots and military ballots) cast in the second primary election for the office of Alderman-at-Large in the City of Crowley, which election was held on May 12, 1962. The contestant demands that following such recount judgment be rendered decreeing him to be the nominee of the Democratic Party for that office. The defendants named in this suit are the contestee, Dr. T. L. McNeely, and the Crowley Democratic Municipal Executive Committee.
The position of contestant is based upon two primary contentions: first, that the tabulation of the results by the Parish Custodian, the Clerk of Court, in his favor must be accepted as evidence in this suit of his having received a majority of the legal votes cast in the election; and second, that if such tabulation is not to be recer. ed in evidence for that purpose, contestant is entitled to recount all of the absentee and military ballots that were cast, and that the valid and legal absentee and military ballots cast in his favor and the valid and legal absentee and military ballots cast in favor of Dr. McNeely, when added to the total votes received by each of them on the 'voting machines, would result in contestant being declared the winner of the primary election and as having received a majority of the legal votes cast.
The defendant committee filed an exception of no cause and no right of action, which exception, during the course of the trial, was sustained by the district court. The contestee, Dr. McNeely, also filed an exception of no cause and no right of action which was sustained by the trial court insofar as the votes shown to have been cast on the voting machines were concerned. This ruling by the court was limited to the issue as to whether plaintiff is entitled to a recount of the votes cast on the voting machines, and as to such votes the court held that no recount could be had. The contestant concedes that such ruling is correct. See Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292.
The contestee, Dr. McNeely, reserving his rights under the exception of no right and no cause of action, then filed an answer. Thereafter the contestant filed a motion for a summary judgment, contending that the tabulation made by the Clerk of Court, under the provisions of LSA-R.S. 18:1193, subd. B, was conclusive as to the result of the election. This motion for a summary judgment was denied by the court, and in so doing the court held, in effect, that the tabulation made by the Parish Custodian, the Clerk of Court, was not conclusive as to the number of votes cast for each candidate in said election.
The case was then tried on its merits, and following the trial the court held that contestant had not laid the proper foundation, as required ty LSA-R.S. 18:364 and the jurisprudence of this State, which would entitle him to judgment ordering a recount of the absentee and military ballots. Judgment accordingly was rendered by the district court in favor of contestee, and against contestant, rejecting the demands of the contestant at his costs, and decreeing *686 the contestee, Dr. McNeely, to he the democratic nominee for Alderman-at-Large for the City of Crowley as a result of the election held on May 12, 1962. From that judgment contestant has perfected this appeal.
Contestant contends primarily that the trial court erred in holding that the tabulation made by the Clerk of Court under the provisions of LSA-R.S. 18:1193, subd. B, was not conclusive evidence as to the number of votes cast for each candidate in that election. Contestee, on the other hand, argues that the tabulation made by the Clerk does not constitute legal evidence of the number of votes cast at said election, because in making that tabulation the Clerk failed to comply with the provisions of LSA-R.S. 18:1193.
LSA-R.S. 18:1193, relating to the tabulation of votes which the Parish Custodian is required or is authorized to make following elections, provides that:
“A. All voting machines shall remain locked and sealed until the fourth day after the use thereof in an election unless the machines are ordered opened and the seals broken sooner, by and on the authority of an order of a court of competent jurisdiction, if the issue of the election is in judicial controversy. Should no such order be entered, the parish custodian in the presence of the chairman of the parish, executive committee in the event of a primary election * * * shall on the fourth day after the election break the seals and open the machines, unless instructed to the contrary by an order of the chairman of the parish committee, in the event of a primary election, * *. Upon the breaking of fhe seals as herein provided, the same shall be done in the presence of any of the candidates at the election, or the representatives of them, who desire to be present, after due notice thereof to the candidates by posting notice on the front door of the courthouse by the parish custodian the day after the election, stating the date, time and place or places where the seals may be broken.
“B. Upon opening of the machines by the parish custodian as provided in Subsection A above, the parish custodian shall immediately transcribe the totals for each candidate as they ap.pear on the machines, and shall record the number of absentee and military votes cast for each candidate. In the presence of the candidates or their representatives, the parish custodian shall transcribe the totals, whereupon these totals so transcribed by the parish custodian shall become legal evidence of the number of votes cast for each candidate in said election, and accepted as such in any contest suit which may arise. As amended Acts 1954, No. 64, § 1.” (Italics added)
The evidence in this case establishes that the Parish Custodian did not post a notice on the front door of the courthouse the day after the election, stating the date, time and place where the seals of the voting machines were to be broken. The chairman of the Parish Executive Committee was not present at the time the machines were opened and the seals broken, and he had received no notice of the fact that the machines were to be opened and the seals broken at that time and place. Also, the Parish Custodian did not record the number of absentee and military votes cast for each candidate at that election immediately after the voting machines were opened. The evidence shows, in fact, that he did not record and transcribe the number of absentee and military votes cast at that election until May 21, 1962, or five days after the machines had been opened, and the record or tabulation which he made at that time was made out of the presence of the candidates or their representatives.
We think the quoted provisions of LSA-R.S. 18:1193 are intended to be mandatory. We particularly feel that it is mandatory that the Parish Custodian record-the *687 number of absentee and military ballots cast for each candidate immediately after the machines have been opened, and that he at the same time transcribe the totals. In this case it is apparent that there has been no compliance, not even a substantial compliance, with these provisions of this section of the Revised Statutes.
In view of the failure of the Parish Custodian to comply with the requirements of LSA-R.S. 18:1193, in the particulars here-inabove set out, we conclude that the trial court properly refused to accept the tabulation made by him, rather than the tabulation made by the commissioners, as proof of the number of votes cast for each candidate at that election.
Contestant contends, alternatively, that in the event the tabulation made by the Parish Custodian does not constitute legal evidence of the number of votes cast for each candidate, he nevertheless has the right, under the provisions of LSA-R.S. 18:364, to judgment ordering a recount of the absentee and military ballots cast in said election. Contestee takes the position that a recount should not be ordered, because the contestant has failed to establish by a preponderance of the evidence that the ballots were kept in such a manner that it is improbable that they could have been tampered with, and accordingly he has failed to carry the burden of proof as required by LSA-R.S. 18:364.
Section 86 of Act 46 of 1940, which is now incorporated in the Revised Statutes as LSA-R.S. 18:364 and which sets out the procedure and requirements for obtaining a recount, contains the following pertinent provision:
“ * * * However, before any box is thus recounted satisfactory evidence shall be produced to the court that the box or the contents thereof have not been tampered with or disturbed subsequent to its closing by the commissioners.”
Prior to the enactment of this statute in 1940, the jurisprudence was well established to the effect that the party tendering the ballots in evidence for the purpose of obtaining a recount of them had the burden of showing to a reasonable certainty that they had not been tampered with since the election, or that their preservation had been such as to exclude any reasonable opportunity of tampering with them. As early as 1912, in the case of Thornhill v. Wear, 131 La. 739, 60 So. 228, our Supreme Court placed the burden on the party offering the ballots for recount to prove that no opportunity for tampering with them was afforded by the manner in which they were kept subsequent to the election. Justice Provosty, as organ of the court, states in the opinion that:
“ * * * It suffices for destroying the character of these ballots as evidence that full opportunity was afforded for their being changed, so that the court cannot, in the nature of things, have legal assurance of their not having been changed.”
The foregoing rule was re-iterated and further clarified in McConnell v. Salmon, 174 La. 606, 141 So. 73, wherein it was stated:
“The general rule which prevails in this state and elsewhere is that the burden is upon him who seeks to offer the ballots in evidence to prove with reasonable certainty that they have not been tampered with since the election, or that their preservation has been such as to exclude any reasonable opportunity of tampering with them, or that they have been so kept as to render it improbable that they could have been tampered with. It is not necessary, however, that the party show that tampering with them was impossible.
sjc sfc ‡
“ * * * Whether the boxes and ballots were in fact tampered with is not the question. The point is that *688 they were so exposed as to have afforded an opportunity to be tampered with.”
The rule announced in the McConnell case, supra, was applied by the First Circuit Court of Appeal in Welch v. Fitzgerald, La.App., 144 So. 73 (1936).
Although Section 86 of Act 46 of 1940 (now LSA-R.S. 18:364) only requires that before any box is recounted, “satisfactory evidence” shall be produced to the court that the box or the contents thereof have not been tampered with or disturbed subsequent to its closing by the commissioners, our Supreme Court has since decided that the passage of this act in no way modified the previously existing jurisprudential rule, as enunciated in the McConnell case, so that “satisfactory evidence” means evidence which proves to a reasonable certainty that between the time of the closing of the box by the commissioners and the time of its production in court, there has never existed a reasonable opportunity for either the box or the ballots inside to be tampered with. Guillory v. Evangeline Parish Democratic Executive Committee, 220 La. 888, 57 So.2d 758; See also Hill v. Vernon Parish Democratic Executive Committee, La.App. 1 Cir., 56 So.2d 868; and Kling v. DeArmand, La.App. 1 Cir., 57 So.2d 234.
In Guillory v. Evangeline Parish Democratic Executive Committee, supra, the court said:
“The proof that the statute requires before any such recount may be obtained is satisfactory evidence that the box or the contents thereof have not been tampered with or disturbed after its closing by the commissioners, whereas under the general rule which prevailed prior thereto the proof required was evidence which would prove with reasonable certainty that they had not been tampered with since the election. We do not think there is any material difference between the degree of proof required by the statute and that required by the general rule recognized before its enactment. We do think that proof should be made that there has been no reasonable opportunity for the box or its contents to have been tampered with in order to comply with the statutory requirement of satisfactory evidence.” (Italics added.)
The evidence here establishes that the election commissioners actually received from the Clerk of Court a total of 26 absentee and military ballots, and they tabulated 23 of them, apparently determining that three of these ballots were spoiled. The commissioners then placed the 26 absentee and military ballots in the voting machines as required b}*- law. Immediately after the polls were closed and the commissioners had tabulated the results, the voting machines were locked and sealed and were taken to a warehouse provided by the Parish Custodian. Thereafter, on Tuesday, May 15, 1962, the Crowley Democratic Municipal Executive Committee, basing its actions on the tabulation of the commissioners, promulgated the results of the election, showing that the contestant received 1975 votes, and that the contestee received 1980 votes. The committee then certified that the contestee, Dr. McNeely, was the nominee of the Democratic party for that office.
At about 9:00 A.M. on Wednesday, May 16, 1962, the Parish Custodian and two deputy custodians, Joseph W. Embry and Cleo-bule Abshire, proceeded to the warehouse, unlocked the machines, broke the seals and removed from the machines the envelopes containing the military and absentee ballots. While the custodian was engaged in recording the total number of votes shown as having been cast on the voting machines, Ab-shire and Embry proceeded to unlock other voting machines and to remove from said machines the envelopes containing the military and absentee ballots and other election paraphernalia. Abshire and Embry placed the envelopes containing the paper ballots and other election paraphernalia in a closet located in a small office in the voting ma *689 chine warehouse. Neither the closet nor the office were locked, and the custodian or his deputies did not remain in the office at all times while the ballots were there. After the custodian had tabulated the totals shown on the voting machines, he and others went into the office for the purpose of recording the absentee and military ballots cast for candidates at that election. The contestant, Sidney Constantin, was one of the persons who accompanied him to this office, but the contestee, Dr. McNeely, was not present. The absentee and military ballots were examined by some of those present, and the Parish Custodian was informed by them that four of these ballots had been cast for contestant and ten had been cast for contestee. The custodian did not examine, count or tabulate these votes at that time, but he simply accepted the information which had been given to him as to the number of absentee and military ballots cast for each candidate. He then added those figures to the totals shown on the voting machines, and entered on his tabulation sheet that the contestant had received 1974 votes and the contestee had received 1972 votes. The paper ballots were then placed in an envelope and were put back into the unlocked closet in that office, and all parties, except Mr. Embry, then left the warehouse about 11:00 A.M.
Mr. Embry remained alone in the warehouse for a period of from 15 to 30 minutes, during which time the envelopes containing the military and absentee ballots remained in the closet. About 11:30 A.M., the contestant, accompanied by two other persons, one of whom is a most highly respected member of the Crowley bar, came to the warehouse for the purpose of examining the absentee and military ballots. Prior to their arrival the Parish Custodian had instructed Mr. Embry by telephone to permit them to examine these ballots, and pursuant to this authorization Embry handed the envelope containing the paper ballots to them and the envelope was opened and the ballots were examined by these three persons in the presence of Mr. Embry. The Parish Custodian arrived at the warehouse about 15 minutes after the ballots had been removed from the envelope, and at about 12:00 o’clock noon the custodian put the paper ballots back in an envelope, took them to his office and kept them under lock and key during the noon hour. At about 1:00 P.M. contestant, contestee and others met with the Parish Custodian in his office in order to further examine the absentee and military ballots. After this was done the ballots were again placed in an envelope and were returned to the cabinet in the custodian’s office, which cabinet was locked. At a subsequent time the contestee’s attorney and his secretary examined the ballots in the presence of the custodian. And, as has already been pointed out, on May 21 the custodian for the first time personally tabulated the military and absentee ballots, and discovered at that time that there were only 17 such ballots in the envelope, whereas 26 had been placed in the machines by the commissioners. He found that ten had been cast for the contestee and four had been cast for contestant. No explanation was made on his official tabulation as to why the remaining three ballots were not counted, but it is assumed that the custodian, like the commissioners, found three of them to be spoiled.
The trial court concluded that the contestant had failed to show that the absentee and military ballots had been preserved in a manner such as to exclude any reasonable opportunity of tampering with them, and accordingly judgment was rendered rejecting contestant’s demands for a recount. In his reasons for judgment the trial judge, after quoting excerpts from LSA-R.S. 18:364 and from Kling v. De-Armand, supra, said:
“A resume of the testimony introduced shows that the legal custodian of the machines, ballots and election paraphernalia, did not handle, preserve and keep the same under the necessary and required surveillance. Among other things, the evidence clearly and un *690 mistakeably shows that the ballot, envelopes, paraphernalia, and so forth, were handled and examined out of the presence of the legal Custodian and out of the presence of his Deputies or other persons who might have been authorized to care for, keep and preserve the same. Therefore, contestant has failed to show the necessary and required preservation of the ballots, envelopes and paraphernalia, that they were preserved in a manner such as to exclude any reasonable opportunity of tampering with them or that they were so kept as to render it improbable that they could have been tampered with.
“In making this ruling, the Court desires that it be strictly understood that it does not intend and does not impute dishonesty or impugn the character of any person involved in this litigation. Nevertheless, it is the Court’s opinion that the rule stated above with reference to the legal and correct preservation of the ballots as required by law must be strictly adhered to so that whenever a recount is actually ordered in any given case that such recount is with assurance of the identical ballots, paraphernalia, envelopes and other things which must of necessity be gone over, which were delivered to the legal Custodian for safekeeping.
“The Court, therefore, denies the right of contestant to the recount and rejects his demands at his cost.”
In our opinion the evidence supports the conclusions reached by the trial judge. We think it appropriate to add that there is nothing in the record which tends in any manner to impugn the character of or to indicate dishonesty on the part of either of the candidates, the Parish Custodian, the deputy custodians, the election commissioners, or anyone else who examined the ballots or who may have been present when any of the events mentioned here occurred. No dishonesty or fraud was alleged or charged by either party, and all counsel agree that none was shown or even intimated. On the contrary, the evidence shows that everyone who had anything to do with the election, or with the examination and tabulation of the ballots, was most sincere in his efforts to obtain a true and accurate tabulation of the votes cast.
Under the provisions of LSA-R.S. 18:-364, subd. E, we are required to decide cases of this nature within 24 hours of submission. We did that in this case, reserving the right to give written reasons later for that decision. For the reasons herein assigned, therefore, we repeat the decree which we handed down on May 29, 1962.
The judgment of the district court is affirmed. All costs of this appeal are assessed to appellant.
Affirmed.